KASPER GLOBAL COLLECTION & BROKERS, INC. as Nominee for Atlas Meble Kuchenne Sp.z o.o., Plaintiff,

v.

GLOBAL CABINETS & FURNITURE MANUFACTURERS INC., Denton Stoneworks Inc., Boguslaw Kaczor and Artur Bobko Individually and d/b/a Atlas Kitchens Inc., Affordable Kitchens by Atlas, World of Interiors, LLC and DKF Designs LLC, Defendants.

No. 10 Civ. 5715(DF).

United States District Court,
S.D. New York.

July 1, 2013.

Robert S. Sikorski, Wojtek Scott Krol, Busson and Sikorski, New York, NY, for Plaintiff.

Aleksandr Altshuler, Segal Gebski PLLC, Marius Segal–Gebski, Law Office of Segal–Gebski, New York, NY, Jeremy R. Kalina, Tunstead & Schechter, Jericho, NY, for Defendants.

## MEMORANDUM AND ORDER

DEBRA FREEMAN, United States Magistrate Judge.

In this contract case, which is before this Court on consent pursuant to 28 U.S.C. § 636(c), plaintiff Kasper Global Collection & Brokers, Inc. ("Plaintiff")[1] has moved for summary judgment on its claims of breach of contract, account stated, and goods sold and received, or, in the alternative, partial summary judgment on certain of those claims. (Dkt. 48.) Defendants Global Cabinets & Furniture Manufacturers Inc. ("Global"), Denton Stoneworks Inc. ("Denton"), Boguslaw Kaczor ("Kaczor"), Artur Bobko ("Bobko"), Atlas Kitchens Inc. ("Atlas Kitchens"), and Affordable Kitchens by Atlas ("Affordable Kitchens") (collectively, "Defendants")[2] have cross-moved for dismissal of the entire Complaint or, in the alternative, dismissal of all claims against certain defendants or summary judgment in favor of all Defendants. (Dkt. 55.)

In support of their cross-motion, Defendants argue, *inter alia*, that the Court must dismiss Plaintiff's Complaint in its entirety because all of Plaintiff's claims are subject to an enforceable forum-selection clause, which requires the parties to liti-

---

1. Plaintiff appears as nominee for Atlas Meble Kuchenne Sp.z o.o. ("Atlas Meble"), a foreign corporation organized and existing under the laws of the Republic of Poland. (*See* Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment or in the Alternative Partial Summary Judgment ("Pl. 56.1 Stmt.") (Dkt. 53), ¶ 1.) According to Plaintiff, on or about January 15, 2010, Atlas executed a Power of Attorney naming Kasper its Attorney–in–Fact, in order to facilitate a resolution of this dispute. (*Id.* ¶ 16.) Defendants refer to Plaintiff and Atlas Meble interchangeably, and the Court will do so, as well, for purposes of this Opinion.

2. Additionally named defendants Works of Interiors, LLC and DKF Designs LLC ("DKF") have not appeared in this action. Plaintiff, however, contends that these two entities may not exist, and therefore is not currently pursuing a default judgment against them. (*See* Plaintiff's Letter to the Honorable William H. Pauley TU, U.S.D.J, dated Dec. 8, 2010 (Dkt. 14) (withdrawing Plaintiff's then-pending Motion for a Default Judgment against Works of Interiors and DKF).) In its brief, Plaintiff represents that, during discovery, Plaintiff agreed to withdraw those portions of the Complaint relating to those entities and not to seek judgment on their alleged purchases. (*See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment or in the Alternative for Partial Summary Judgment, dated August 31, 2012 ("Pl. Mem.") (Dkt. 52), at 1.)

gate this case, if at all, in a Polish court, under Polish law. (*See* Defendants' Memorandum in Support of Cross–Motion to Dismiss or for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, dated Sept. 21, 2012 ("Def. Mem.") (Dkt. 57), at 1.)

For the reasons that follow, the Court agrees that the forum-selection clause to which Defendants refer is enforceable, but, on the record presented, finds that it may be enforced only as to Plaintiff's claims against Global and Kaczor, and as to Plaintiff's claims against Bobko based on any Global transactions. The Court therefore grants Defendants' cross-motion (Dkt. 55) for summary judgment in part, and dismisses all of Plaintiff's claims against Global and Kaczor, as well as any of Plaintiff's claims against Bobko that are based on the Global transactions. Defendant's cross-motion is otherwise denied.

As to Plaintiff's motion for summary judgment (or partial summary judgment) on claims asserted against the remaining defendants—Affordable Kitchens, Atlas Kitchens, Denton, and Bobko (based on the conduct of Affordable Kitchens and Atlas Kitchens)—the Court concludes that Plaintiff has not demonstrated the absence of material issues of fact. Accordingly, that motion (Dkt. 48) is denied, as is Plaintiff's motion to dismiss Bobko's counterclaim.

## BACKGROUND

### A. Factual Background [3]

### 1. Atlas Meble's Business Arrangements With Affordable Kitchens and Atlas Kitchens

Atlas Meble is a Polish corporation that manufactures custom-made furniture in Poland, with its chief product consisting of custom kitchens (*i.e.*, suites of kitchen cabinets, counters, and the like). (Pl. 56.1 Stmt. ¶ 1.) The company does not sell to individual consumers; rather, it partners with autonomous retailers in given markets to sell its furniture in those markets. (*Id.* ¶ 20.)

In 2005, Atlas Meble began doing business with defendant Affordable Kitchens, a limited liability company that, at that time, operated a retail store in New Jersey. (Defendants' Statement of Material Facts Pursuant to Local Rule 56.1, dated Sept. 21, 2012 ("Def. 56.1 Stmt.") (Dkt. 61), ¶¶ 7, 9.) Defendant Bobko and his partner, Jacek Malkanski, were the sole principals of Affordable Kitchens. (Declaration of W. Scott Krol, Esq., dated Aug. 31, 2011

---

**3.** Ordinarily, in describing the undisputed facts presented on a summary judgment motion, the Court would cite primarily to the parties' statements of material fact pursuant to Local Civil Rule 56.1. Here, however, neither Plaintiff nor Defendants have cited to evidence in support of their Rule 56.1 Statements, thus defeating the statements' purpose, which is to "aid the Court in understanding which facts are in dispute and to help the Court frame the issues which deserve its attention." *Ediciones Quiroga, S.L. v. Fall River Music, Inc.*, 93 Civ. 3914(RPP), 1998 WL 851574, at *2 n. 3 (S.D.N.Y. Dec. 7, 1998) ("Assertions in a 56.1 statement which are styled as 'undisputed facts' but which do not cite any admissible evidence are arguments," which are not properly part of a 56.1 state-ment. In addition, the Court notes that Plaintiff's Memorandum of Law contains virtually no citations to evidence submitted by Plaintiff or Defendants, and that the few times citations are provided, they are incomplete. (*See, e.g.*, Pl. Mem., at 16 (repeatedly stating "see Kaczor Dep. ——," with the blanks not filled in).) The Court has therefore undertaken to review the record and cites to the parties' Rule 56.1 Statements only where the record contains support for the statements. To the extent the parties' statements contradict one another, the Court has attempted to ascertain whether the evidentiary record actually reveals any conflict. To the extent the Court cites the Complaint as a source of additional facts, it does so to place the relevant, undisputed facts in context.

("Krol Decl.") (Dkt. 50), Ex. B (Transcript of deposition of Artur Bobko, conducted Nov. 23, 2011), at 16:10–13, 17:14–16).

In 2007, Bobko dissolved the New–Jersey–based Affordable Kitchens and—purportedly at the request of the then-president of Atlas Meble, Tadeusz Nowicki ("Nowicki")—created a New York business in its stead (Atlas Kitchens), which opened a store in Yonkers, New York. (*See* Def. 56.1 Stmt. ¶ 17; Krol Decl., Ex. B, at 6:7–8, 8:15–17, 16:6–22, 17:3–10; Affidavit of Artur Bobko, sworn to Feb. 10, 2012 ("Bobko Aff.") (Dkt. 59), ¶ 6.) The parties dispute whether, prior to its dissolution, Affordable Kitchens fully paid for its orders from Atlas Meble. According to Bobko, at the time when it was agreed that Affordable Kitchens should cease doing business, Affordable Kitchens paid all outstanding obligations to Plaintiff by wire transfer. (Bobko Aff. ¶ 6; Def. 56.1 Stmt. ¶ 16.) Plaintiff, however, has submitted numerous invoices and shipping records (*see generally* Krol Decl., Ex. G (Invoices and Shipping Records)[4]), and asserts, based on those records, that Affordable Kitchens still owes a balance of $29,526.74 for purchases made in 2006. (*See* Pl. 56.1 Stmt. ¶ 23.) Neither party submits documentary evidence of payments made by Affordable Kitchens.

As for the new Atlas Kitchens business, Bobko contends that it was not only created at the specific request of Atlas Meble, which wanted a presence closer to New York City (Def. 56.1 Stmt. ¶ 17; Bobko Aff. ¶ 6), but that it was formed based on Atlas Meble's express agreement to provide the new store with a showroom, samples, catalogs, training, and employees in order to conduct its business in New York

(Def. 56.1 Stmt. ¶ 28; *see also* Bobko Aff. ¶ 8). According to Bobko, while this was not memorialized in a written contract, he had a "verbal agreement" with Nowicki to this effect. (Krol Decl., Ex. B, at 9:24–10:2.) Defendants assert that, in reliance on this agreement, Bobko expended sums in excess of $100,000 to establish Atlas Kitchens, but, other than providing some showroom material (Def. 56.1 Stmt. ¶ 28) and catalogs (Bobko Aff. ¶ 8), Plaintiff failed to assist Atlas Kitchens in any way in the establishment and operation of its business (Def. 56.1 Stmt. ¶ 28).

Plaintiff, meanwhile, claims that Atlas Kitchen owes it payment on furniture orders. (Pl. 56.1 Stmt. ¶ 24.) It is undisputed that Atlas Kitchens received furniture from Atlas Meble (*id.* ¶ 29) and sold some of Atlas Meble's furniture to retail customers (Krol Decl., Ex. B, at 44:7–10). It is also undisputed that Bobko still has some kitchen furniture in his possession (Pl. 56.1 Stmt. ¶ 34), although Bobko testified that this furniture was display furniture that Atlas Meble provided as part of its alleged agreement to do so (Krol Decl., Ex. B, at 13:7–14:7). Plaintiff concedes that Atlas Kitchens paid some of its invoices, but contends that Atlas Kitchens still owes a balance of $23,634.76 for purchases of furniture from Atlas Meble. (*See* Pl. 56.1 Stmt. ¶ 24.)

While Bobko acknowledges that Atlas Kitchens did not make payment on all of the invoices it received (Krol Decl., Ex. B, at 44:7–15, 45:6–14), Defendants allege that there were ongoing disputes with regard to invoices that Plaintiff presented to Atlas Kitchens, that Atlas Kitchens repeatedly notified Plaintiff of the discrepancies and errors in such statements, that

---

4. The invoices for orders from Affordable Kitchens are dated April 7, 2005 ($28,893.37), August 11, 2005 ($3,902.91), June 23, 2006 ($792.07), June 29, 2006 ($27,300.68), July 5, 2006 ($15,885.41), July 6, 2006 ($4,176.22), October 4, 2006 ($1,180.00), October 23, 2006 ($556.00), and April 5, 2006 ($949.15).

Plaintiff authorized credits for untimely orders, and that Atlas Kitchens made all payments reasonably due (Def. 56.1 Stmt. ¶ 21; Bobko Aff. ¶¶ 9–11). Bobko also contends that orders were shipped by Atlas Meble on an extremely delayed basis, that customers of Atlas Kitchens could not wait six months for cabinets, that orders were cancelled, and that business was lost. (Bobko Aff. ¶ 11.) Bobko also states that, because of the delayed orders, he had to lend Atlas Kitchens money to pay customers who could not finish construction work on their kitchens. (*Id.* ¶ 9.) In connection with their payment dispute, Plaintiff submits invoices and shipping records for furniture that it claims to have sent to Atlas Kitchens. (Krol Decl., Ex. G.)[5] Defendants, on the other hand, submit email correspondence between Atlas Kitchens and Atlas Meble regarding delayed shipments and nonconforming products. (*See generally* Def. Mem., Ex. A–1 (Translated email correspondence) (Dkt. 62).[6]) Bobko asserts that credits for some of these orders were agreed upon by Nowicki, on behalf of Atlas Meble, and Bobko, on behalf of Atlas Kitchens. (Bobko Aff. ¶ 11.) Bobko also asserts that there was an express agreement that a set-off was to be made for any balance owed by Atlas Kitchens for amounts that Bobko expended in establishing Atlas Kitchens. (*Id.*)

According to Bobko, Atlas Kitchens went out of business after only a few months of operation because of Atlas Meble's untimely and inadequate shipments and because of the failure of Atlas Meble, in general, to "perform its part in connec-

tion with the operation of such business." (*Id.* ¶¶ 8, 10; *see also* Krol Decl., Ex. B, at 9:6–7 (noting that Atlas Kitchens went out of business in 2008).) Bobko states that, after Atlas Kitchens went out of business, he received an invoice and immediately informed Nowicki and Tomasz Glodz ("Glodz"), an Atlas Meble sales representative, that the invoice was totally incorrect, because it related to orders that were either delivered with nonconforming goods or that were delivered months late and could not be used by the customers who placed the orders. (Bobko Aff. ¶ 10.) Bobko also notes that Nowicki lost his job soon after Atlas Kitchens went out of business, and (although this is not entirely clear), Bobko seems to suggest that, after that point, he started receiving additional invoices in connection with shipments that were either defective or delivered far beyond the promised delivery dates, and that Atlas Kitchens should not have been obligated to pay such invoices. (*See id.* ¶ 11.)

### 2. *Atlas Meble's Venture Agreement with Global*

In 2006—prior to the dissolution of Affordable Kitchens and creation of Atlas Kitchens—Bobko and Kaczor, along with two other individuals not named as defendants in this case, Janusz Matusiewicz ("Matusiewicz") and Gabriele Capacchione ("Capacchione"), flew to Poland to pursue another business venture with Atlas Meble. (Pl. 56.1 Stmt. ¶ 12; Def. 56.1 Stmt. ¶ 15.) On October 30, 2006, defendant Global—a New York corporation formed by these individuals[7]—and Atlas Meble

---

5. In particular, Plaintiff submits two invoices, one dated April 9, 2008, for the amount of $1,268.00, which appears to be for transportation costs, and the other dated November 30, 2007, for $26,673.81 for various pieces of furniture.

6. Representative emails contained in this exhibit bear these document identification num-

bers: Bobko 28, 29, 31, 33, 34, 35, 45–46, 50, 52–53, 59, 63–67, 68–71, 72–73, 74–75, 76–85, 86, 88–89, and 97–98.

7. Bobko, Kaczor, Matusiewicz, and Cappachione were the sole shareholders of Global and each owned a minority interest. (Bobko Aff. ¶ 4; Affidavit of Boguslaw Kaczor, sworn

entered into an agreement ("Venture Agreement" or "Agreement"), wherein they agreed that, upon Global's purchase orders, Atlas Meble would supply furniture to Global, and Global would then sell, market and install that furniture in the United States. (*See* Pl. 56.1 Stmt. ¶¶ 11, 5; Krol Decl., Ex. A (Plaintiffs' translated Venture Agreement, dated Oct. 30, 2006), at PL000348.) The Agreement was drafted by Atlas Meble (Def. 56.1 Stmt. ¶ 15) and was signed on its behalf by Tadeusz Nowicki, the company's President, and Hubert Nowicki, its Vice President. (*Id.;* Krol Decl., Ex. A, at PL000348.) On Global's behalf, the Agreement was signed by Bobko, Kaczor, Matusiewicz, and Cappachione. (Krol Decl., Ex. A, at PL000348; Bobko Aff. ¶ 3; Kaczor Aff. ¶ 3.) Plaintiff, though, contends that these four individuals signed the Venture Agreement not only as Global's corporate representatives, but also in their individual capacities (Pl. 56.1 Stmt. ¶ 12), which Bobko and Kaczor dispute (Bobko Aff. ¶ 3; Kaczor Aff. ¶ 3).

The Venture Agreement, which was written entirely in Polish,[8] itself states that it is an agreement by and between

> ATLAS MEBLE KUCHENNE, limited liability partnership 64–300 Nowy Tomysl, U1. Polwiekskiej 31, NIP PL7881872702 registered in regional court in Poznan, XXI Business Devision [sic] of National Court Registry under number KRS 0000222709 in the name of which appears the prepartynt [sic] of the board Tadeusz Nowicki, hereafter called

> Seller and GLOBAL KABINETS & FURNITURE MANUFACTURERS INC. in the name of whom appear Janusz Matusiewicz, Boguslaw Kaczor, Artur Bobko and Gabriele Capacchione, hearafter [sic] Purchaser.

(Krol Decl., Ex. A, at PL000348.)

Pursuant to the terms of the Venture Agreement, Global and Atlas Meble agreed to "enter into sales agreements" for furniture orders ("Order Contracts" or "Orders"), which would be effective on "the date of the confirmation by the purchaser of the offer made by the Seller in accordance to paragraph 6.2 below." (Krol Decl., Ex. A, at PL000348, § 1.3.) Sections 5 and 6 of the Venture Agreement describe the process for submitting these Orders, including the terms that an Order would be required to contain, such as an order number; a specification of the products ordered, along with the quantity; a graphic rendering of the goods, drawings of the work and other elements necessary to begin production of the order; and the place of delivery for the order. (*Id.* at PL000350, §§ 5–6.) The Venture Agreement also provides that Orders would be sent "by facsimile or electronic mail in accordance with the process used by the seller" (*id.* § 5.1), and paragraph 6.2 provides that offers would be accepted by the purchaser by the same means (*id.* § 6.2). In addition, the Venture Agreement states that "any language of the sales agreement not [e]numerated in the offer of the seller

---

to Feb. 10, 2012 ("Kaczor Aff.") (Dkt. 58), ¶ 4; Def. 56.1 Stmt. ¶ 20.)

**8.** Both parties have now provided certified English translations of the Venture Agreement. The translations, however, differ in some respects. Except where otherwise indicated, the facts regarding the Agreement stated herein are based on the Plaintiff's translation, as Plaintiff is the non-movant on the motion to enforce the forum-selection clause

and the Court looks at the facts in the light most favorable to the non-movant on a motion for summary judgment. (*See infra* Part I.A; *see also Altvater Gessler–J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.,* 572 F.3d 86, 90 n. 5 (2d Cir.2009) (noting that where, at motion-to-dismiss stage, parties provided conflicting translations of contract, court must view the facts in the light most favorable to the non-moving party).)

and the confirmation of the purchaser" would be "filled in accordance with this agreement." *(Id.* at PL000348, § 1.3)

Within a section entitled "Final Provisions," the Venture Agreement contains both a choice-of-law clause and a forum-selection clause. Plaintiff's translations of the relevant clauses read as follows:

> § 16 ... (1) As to the choice of law with respect to the fulfillment of these obligations the parties agree to [P]olish law.
>
> § 17 ... (3) All disputes arising out of this agreement, the sides agree to be decided in a court competent to the seat of the seller.

*(Id.* at PL000353–54). As noted above *(see* n. 8, *supra* ), Defendants' translations of the relevant clauses are somewhat different, and read as follows:

> § 16 ... (1) The parties agree that compliance with obligations between the parties hereunder shall be assessed in accordance with the law of Poland.
>
> § 17 ... (3) The Parties agree to submit for settlement any disputes arising from this agreement to the court with jurisdiction over seller's registered office.

(Def. Mem., Ex. B (Defendants' translation of Venture Agreement, dated Oct. 30, 2006), at PL000052–53.) In their affidavits, Bobko and Kaczor both assert that litigation in Poland was a term upon which Atlas Meble had insisted throughout the parties' negotiations. (Bobko Aff. ¶ 3; Kaczor Aff. ¶ 3.)

After the Venture Agreement was signed, Global placed an Order with Atlas Meble for 520 sets of storage beds, headboards, and desk systems, for a project entitled "Steva." (Def. Mem., Ex. A (corporate records and email correspondence), at DF00006–7, 9–10; Kaczor Aff. ¶ 7.)

Aside from the Steva project, Global placed at least one more Order for furniture. (Krol Decl., Ex. C (Transcript of deposition of Boguslaw Kaczor, conducted Nov. 23, 2011), at 18:5–12.) Defendants contend that the materials delivered to Global by Atlas Meble were sometimes delivered more than six months late and, when finally delivered, did not conform with the specifications provided and required extensive alteration in order to be usable. (Def. 56.1 Stmt. ¶ 19.) Defendants also contend that, as a result, Global suffered significant losses *(id.),* that a substantial dispute existed between Atlas Meble and Global regarding the value of the goods sold and delivered, and that Global repeatedly informed Plaintiff in writing and by telephone of this situation *(id.* ¶ 25). Defendants assert that Atlas Meble, through Nowicki, agreed to revise the price of the products due to defects and the extreme delay in providing the products to Global. *(Id.* ¶ 19; *see also* Def. Mem., Ex. A, at DF000048, DF0000014.)

While Global made some payments for these orders, Plaintiff claims that Global owes it a balance of $260,192.59. (Pl. 56.1 Stmt. ¶ 15.) Defendants acknowledge that Global has not made full payment to Plaintiff (Kaczor Aff. ¶ 9), but argue that ongoing disputes exist with regard to invoices presented by Plaintiff to Global. (Def. 56.1 Stmt. ¶ 21.) Global contends that it reasonably notified Plaintiff of the discrepancies and errors in such statements and made all payments reasonably due thereunder. *(Id.)* Plaintiff states that it attempted to collect on outstanding invoices prior to 2008 (Pl. 56.1 Stmt. ¶ 35), but that Global was dissolved on June 2, 2009 (Def. Mem., Ex. A, at DF000004).

### 3. *Atlas Meble's Business Dealings With Denton*

In late 2007, defendant Denton, a New York corporation (Pl. 56.1 Stmt. ¶ 6),

placed an order with Atlas Meble for kitchen furniture (Kaczor Aff. ¶ 5). Kaczor is the founder, sole shareholder, and president of Denton. (Pl. 56.1 Stmt. ¶ 7; Krol Decl., Ex. C, at 5:10–6:4.) Plaintiff does not provide a contract, but attaches a shipping record and invoice, dated November 30, 2007 and addressed to Denton, for the amount of $33,525.58. (Krol Decl., Ex. G.) Plaintiff asserts that, while Denton paid for some of this purchase, it owes a balance of $23,525.58. (Pl. 56.1 Stmt. ¶ 26.)

Defendants contend that Denton paid all invoices duly submitted to it by Plaintiff for furniture ordered and delivered. (Def. 56.1 Stmt. ¶ 16.) According to Kaczor, Denton placed only a single order with Atlas Meble and paid Atlas Meble $41,028.00 for that order, which was actually an overpayment. (Kaczor Aff. ¶ 5.) Defendants submit Denton's bank records showing three wire transfers in 2007 to Plaintiff, along with a fax cover-sheet for one of the transfers. (Def. Mem., Exs. C–D.) Plaintiff concedes that $41,028.00 was transferred from Denton's bank account (see Pl. Mem., at 19), but contends that a portion of these funds were applied to Global's account instead (id.). In this regard, Glodz testified that sometimes Defendants would wire money from one defendant's bank account to Atlas Meble, but would ask that Atlas Meble apply that money to another defendant's balance. (See Krol Decl., Ex. E (Transcript of continued deposition of Tomasz Glodz, conducted Nov. 23, 2011), at 122:16–23.) Kaczor states that, if this happened, it was without Denton's authorization and in violation of Denton's explicit instructions. (Kaczor Aff. ¶ 6.)

### B. *Procedural History*

Plaintiff commenced this action on July 28, 2010, alleging claims against all Defendants for account stated, breach of contract, goods sold and delivered, sale of goods breached by buyer, and unjust enrichment, and seeking relief in the sum of $386,034.01 with interest and penalties. (*See generally* Complaint, dated July 27, 2010 ("Compl.") (Dkt. 1).) Plaintiff generally alleges that Atlas Meble shipped orders of furniture to Defendants and that Defendants accepted the furniture, but refused to pay for many of the shipments. Denton and Kaczor answered the Complaint on September 26, 2010, and pleaded cross-claims against the other defendants (Dkt. 6); Bobko and Atlas Kitchens answered the Complaint on October 15, 2010, pleading both cross-claims against the other defendants and a counterclaim against Plaintiff (Dkt. 7); Global answered the Complaint on November 2, 2010 (Dkt. 10); and Affordable Kitchens answered the Complaint on November 5, 2010 (Dkt. 12).

Plaintiff filed a motion for summary judgment or partial summary judgment on January 6, 2012 (Dkt. 30), and Defendants cross-moved to dismiss or, alternatively, for summary judgment on February 16, 2012 (Dkt. 38). Plaintiff filed a reply on its motion and an opposition to the cross-motion on March 15, 2012 (Dkt. 44), and Defendants filed a reply on their cross-motion on March 30, 2012 (Dkt. 46). On its motion, Plaintiff argued that, based on the record, including the Venture Agreement, Plaintiff was entitled to recover from Defendants for their failure to pay for goods delivered. (*See generally* Dkt. 34.) On their cross-motion, Defendants argued that Plaintiff's entire Complaint should be dismissed because all of the claims were purportedly subject to an enforceable forum-selection clause in the Venture Agreement, or, in the alternative, that claims against select defendants should be dismissed. (Dkt. 39.) The translations of the Venture Agreement that the parties submitted, however, were uncertified. (*See* Dkt. 35, 46.) The Court denied

both the motion and cross-motion, without prejudice to renew "upon the submission of certified translations of all documents on which any moving party seeks to rely," including the Venture Agreement.[9] (Dkt. 47.)

On August 31, 2012, Plaintiff filed a renewed motion seeking summary judgment or partial summary judgment on all of its claims, as well as dismissal of Bobko's counterclaim. (Dkt. 48.) Plaintiff argues that, under Rule 56 of the Federal Rules of Civil Procedure, it is entitled to summary judgment on its claims for account stated, breach of contract, and goods sold and delivered because there are no issues of material fact with respect to these claims. (*See generally* Pl. Mem., at 5–12.) Plaintiff also seeks an order holding Bobko and Kaczor individually liable for the acts of corporate entities claimed by Plaintiff to be their alter-egos. (*Id.* at 12–19.) Finally, Plaintiff argues that Bobko's counterclaim should be dismissed for failure to state a claim. (*Id.* at 19–20.) Along with its other exhibits, Plaintiff submits a certified translation of the Venture Agreement, which, except for the certification, is in all material respects identical to the translations that both Plaintiff and Defendants had submitted with their first motions for summary judgment. (Dkt. 50.) Plaintiff's translation is certified as true and correct by Plaintiff's counsel, who is a native Polish speaker and who has also received extensive education in the United States. (*See* Krol Decl. ¶ 2.)

On September 21, 2012, Defendants filed a renewed cross-motion to dismiss or for summary judgment, together with an opposition to Plaintiff's summary judgment motion. (Dkt. 55.) In their cross-motion, Defendants seek the dismissal of Plaintiff's claims pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, on the ground that the forum-selection clause in the Venture Agreement mandates that all of Plaintiff's claims be brought in a Polish court. (Def. Mem., at 7–12.) Defendants also move to dismiss any claims brought by Plaintiff against Bobko and Kaczor in their individual capacities (*id.* at 12–13), and argue that Plaintiff's claims against Denton and Affordable Kitchens should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim (*id.* at 13–16). In the alternative, Defendants seek summary judgment dismissing all of these claims. (*Id.* at 19.) In opposition to Plaintiff's motion for summary judgment on its claims against Global and Atlas Kitchens, Defendants also argue that, in any event, issues of material fact preclude judgment in Plaintiff's favor. (Def. Mem., at 2–7.) In support of their arguments, Defendants submit certified translations of several documents (Dkts. 57, 62), including a new certified translation of the Venture Agreement, which differs from the uncertified translation both parties had previously submitted. Defendants' certified translation was prepared by a translator at LanguageTran, a third-party translation service. (Dkt. 57.) Along with its renewed cross-motion, Defendants also re-filed the reply—now titled a "Response"—that they had filed on their initial cross-motion. (Dkt. 60.)

Plaintiff did not file an opposition to Defendants' renewed cross-motion, nor did Plaintiff file a reply on its renewed motion

---

**9.** A certified translation is one to which the author swears that the contents are true and accurate and also swears to his or her identity and qualifications to translate the relevant languages. *See, e.g., Ediciones Quiroga,* 1998 WL 851574, at *2 n. 3 ("Translations of for-eign-language documents which are not certified as true and accurate translations and which do not even identify the translator are not properly authenticated and are not admissible as evidence.").

for summary judgment. The Court recognizes, however, that, except for providing certified translations of the Venture Agreement and certain other documents, the parties' motions are essentially identical to their original motions, and that, under the circumstances, Plaintiff may not have understood that it needed to re-file all of its initially-submitted opposition and reply papers. For these reasons, and in the interest of fairness, the Court will consider any responsive arguments that Plaintiff originally raised. (*See* Dkt. 44.)

### *DISCUSSION*

## I. *APPLICABLE LEGAL STANDARDS*

### A. *Rule 56*

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted when the parties' sworn submissions show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128–29 (2d Cir.1996). The moving party bears the burden of showing that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Accordingly, the Court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.,* 138 F.3d 81, 87 (2d Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "If there is any evidence in the record from which a reasonable inference could be

drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Holt,* 95 F.3d at 129.

Nonetheless, the "non-moving party may not rely on conclusory allegations or unsubstantiated speculation," *Robinson v. Allstate Ins. Co.,* 508 Fed.Appx. 7, 9 (2d Cir.2013) (quoting *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998)), but, rather, "must present 'significant probative evidence tending to support the complaint.'" *Smith v. Menifee,* 00 Civ. 2521(DC), 2002 WL 461514, at *3 (S.D.N.Y. Mar. 26, 2002) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). "If the evidence [favoring the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

In sum, the Court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir.1967); *accord Flaherty v. Lang,* 199 F.3d 607, 615 (2d Cir.1999). Where there is no genuine issue of material fact, viewing the evidence in the light most favorable to the nonmoving party, summary judgment is appropriate. *See Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505.

### B. *Local Rule 56.1*

 Under this Court's local rules, a party moving for summary judgment under Rule 56 is required to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a).[10] "The purpose of Local

---

**10.** If the opposing party fails to respond to the moving party's Rule 56.1 Statement, then

Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001). Local Rule 56.1, however, "does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law." *Id.* Thus, the Court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement; it also must be satisfied that the moving party's assertions are supported by the record. *See Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004); *see also Holtz*, 258 F.3d at 74; *Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F.Supp.2d 320, 329 n. 12 (S.D.N.Y.2005). Summary judgment may only be granted where the Court is satisfied that the undisputed facts, as supported by the record, "show that the [movant] is entitled to a judgment as a matter of law." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996) (quoting Fed.R.Civ.P. 56(c)).

## II. *DEFENDANTS' MOTION TO ENFORCE THE FORUM–SELECTION CLAUSE*

As a threshold matter, Defendants seek dismissal of Plaintiff's claims on the grounds that they are subject to a mandatory forum-selection clause in the Venture Agreement, which requires that all disputes be litigated in Poland. Plaintiff argues that the forum-selection clause is not enforceable under the standards set out by the Second Circuit, and that Defendants waived their right to invoke the forum-selection clause by failing to raise it in their first responsive pleading.

For the reasons that follow, the Court finds that (a) all of Plaintiff's claims against Global and Kaczor, as well as Plaintiff's claims against Bobko based on the Global transactions, are subject to an enforceable forum-selection clause mandating that the parties litigate their disputes in Poland, and (b) that Global, Kaczor, and Bobko did not waive their right to invoke this forum-selection clause. The Court concludes, however, that there is no evidence that Plaintiff's claims against Affordable Kitchens, Atlas Kitchens, Denton, or Plaintiff's remaining claims against Bobko (based on the conduct of Affordable Kitchens and Atlas Kitchens), are governed by the Venture Agreement; thus, these claims are not subject to the forum-selection clause.

### A. *The Enforceability of Forum–Selection Clauses*

The Second Circuit has set forth a four-part test for analyzing motions to dismiss a complaint based on a forum-selection clause.

The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires us to classify the clause as mandatory or permissive, *i.e.*, to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so. Part three asks whether the claims

the material facts contained in the moving party's statement may, by operation of the Rule, be deemed admitted as a matter of law. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir.2003); *see also* Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

and parties involved in the suit are subject to the forum selection clause.

If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir.2007) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)) (emphases in original) (citations omitted).[11]

### 1. *Whether the Clause Was Reasonably Communicated*

Plaintiff does not contest that the first prong of the *Phillips* test is satisfied here. While Plaintiff argues that the clause could not have been reasonably communicated to some of the non-signatory defendants, Plaintiff confuses the test. The question is whether the clause was "reasonably communicated to the party *resisting enforcement*" of the clause, *id.* at 383 (emphasis added), which is Plaintiff, not any of the Defendants. As nominee for Atlas Meble, Plaintiff seeks to enforce the terms of the Venture Agreement and therefore cannot, and does not, argue that it was unaware of the clause's existence.

### 2. *Whether the Clause Is Mandatory*

The second question is whether the clause is mandatory or permissive. Although the parties disagree on the proper translation of the forum-selection clause, Defendants argue that, even under Plaintiff's translation, the language of the clause is mandatory. That translation states that "[a]ll disputes arising out of this agreement, the sides agree to be decided in a court competent to the seat of the seller." (Krol Decl., Ex. A, at PL000354.) Defendants contend that the translation "designates the courts of Poland—the seat of the seller [ (Plaintiff) ], a Polish company—as the only appropriate forum for the resolution of any disputes arising out of this Agreement." (Def. Mem., at 7–8.) Conversely, Plaintiff argues that "the more correct interpretation [of the forum-selection clause] would give the seller [ (Plaintiff) ] the power to choose the court" (Reply Memorandum of Law in Response to Defendants' Cross Motion to Dismiss and for Summary Judgment, dated Mar. 15, 2012 ("Pl. Reply") (Dkt. 44), at 9), and that Plaintiff has acted in accordance with this interpretation, by choosing to litigate in this jurisdiction (*id.*). The Court finds that the clause is mandatory and that it requires the parties to the Venture Agreement to litigate in Poland.

Forum-selection clauses can take one of two forms: either the clause is permissive, *i.e.*, the contracting parties intended "to agree on *a potential* situs for suit so as to guarantee that at least one forum will be available to hear their disputes," or, alternatively, the clause is mandatory, *i.e.*, the contracting parties intended "to agree in advance on a forum where any and all of their disputes must

---

11. The Second Circuit has raised doubts about whether federal law should apply to steps two and three of the test for determining the enforceability of a forum-selection clause where the contract contains a choice-of-law clause, *Phillips*, 494 F.3d at 385–86, but where, as here, the parties have relied exclusively on federal law in their briefs on this point (Def. Mem., at 7–12; Pl. Reply, at 8), the parties' implied consent is sufficient to establish choice of law, *id.* at 386 (citing *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir.2004)).

be brought to eliminate the surprise of having to litigate in a hostile forum." *Phillips*, 494 F.3d at 386 (emphasis in original). "Mandatory forum selection clauses ... require that disputes *must* be brought in the designated forum, to the exclusion of all other fora where jurisdiction may also lie." *Global Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir.2011) (citing *Phillips*, 494 F.3d at 386) (emphasis in original). By contrast, "a permissive forum-selection clause 'only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate.'" *Id.* (quoting *Phillips*, 494 F.3d at 386); *see also John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir.1994) ("'[W]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.'" (quoting *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir.1989))).

 "In determining whether a forum-selection clause is mandatory, the initial focus is on the language of the contract." *Global Seafood*, 659 F.3d at 225 (quotation marks and citation omitted). Thus, "[a] forum selection clause is considered mandatory where: (1) 'it confers exclusive jurisdiction on the designated forum' or (2) 'incorporates obligatory venue language.'" *Id.* (quoting *Phillips*, 494 F.3d at 386).

*Boutari* and *Global Seafood*, cited above, offer examples of cases where the requisite mandatory language was missing in the forum-selection clauses at issue. In *Boutari*, the court held that a forum-selection clause stating that "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts, specifically of the Thessalo-niki Courts" was permissive, because it did not contain a "clear indication" that it was granting exclusive jurisdiction to the Greek courts. 22 F.3d at 52–53. Likewise, in *Global Seafood*, the court held that the phrase "is governed by Irish Law and the Irish Courts" was permissive, as the court could not find that "the term 'govern'—standing alone—impart[ed] a clear and unambiguous intent by the parties to confer exclusive jurisdiction on Irish Courts or to select Ireland as the obligatory venue." 659 F.3d at 226. The court noted that "governed" was not "accompanied by a phrase analogous to 'are to be brought,' *i.e.*, specific language that actively channels the suit to a particular court, which would indicate an intent to make the Irish courts the *only* courts that can govern disputes." *Id.* (emphasis in original).

By contrast, where the clause at issue does specify an obligatory venue—one where the dispute is to be decided—it is mandatory. For example, in *Phillips*, also cited above, the court held that a clause instructing that "any legal proceedings that may arise out of [the agreement] are to be brought in England" was mandatory, because the phrase "'are to be brought' establishes England as an obligatory venue." 494 F.3d at 386–87. Likewise, the court extended this ruling to a clause that said "any disputes arising under this Bill of Lading *to be* decided in London," finding that the phrase "to be decided" made the clause mandatory. *Macsteel Int'l USA Corp. v. M/V Larch Arrow, her engines, boiler, etc.*, 354 Fed.Appx. 537, 540 (2d Cir.2009) (emphasis in original); *see also Central Nat'l–Gottesman, Inc. v. M.V.*, 204 F.Supp.2d 675, 678 (S.D.N.Y.2002) (same) (collecting cases). As the court in *Central National–Gottesman* explained, "rather than simply stating that the court in London shall have jurisdiction over all disputes, [the clause] actually makes explicit

that such disputes are to be resolved in that forum and nowhere else." 204 F.Supp.2d at 678.

■■■ Like the clauses in *Phillips, Macsteel,* and *Central National–Gottesman,* the forum-selection clause here provides that "[a]ll disputes arising out of this agreement, the sides agree *to be decided* in a court competent to the seat of the seller." (Krol Decl., Ex. A, at PL000354 (emphasis added).) "The 'to be' language makes the forum selection clause mandatory." *Macsteel,* 354 Fed.Appx. at 540. Unlike the clauses in *Boutari* and *Global Seafood,* the forum-selection clause here does not simply confer jurisdiction on a court, but rather contains that additional language—the phrase "to be decided"—"mak[ing] explicit that ... disputes are to be resolved in [the forum indicated] and nowhere else." *Central Nat'l–Gottesman,* 204 F.Supp.2d at 678.

Of course, the forum-selection clause in the Venture Agreement is slightly different than the clauses at issue in the cases cited above because the clause does not specify a particular court or jurisdiction by name. Yet, despite the differing interpretations offered by the parties, the Court finds that the phrase "court competent to the seat of the seller" is referring to Polish courts and does not, as Plaintiff suggests, mean that Plaintiff can choose the forum.

First, the plain language of the clause supports Defendants' interpretation of the clause as requiring litigation in a Polish court. The relevant dictionary definitions of "competent" are "[t]he capacity of an official body to do something" such as "the court's competence to enter a valid judgment,". Blacks Law Dictionary 322 (9th ed.2009), or "legally fit or qualified," Webster's II New Riverside University Dictionary 290 (1994); *see also* Blacks Law Dictionary, at 322 (referring the term "Competent Court" to one of the definitions of "Jurisdiction," specifically "a court's power to decide a case or issue a decree"). The relevant definition of "seat" is "[t]he center of some activity" such as "the seat of government." *Id.* at 1470. Read together, a "court competent to the seat of the seller" is plainly *not* giving the seller the power to choose the court outright, but rather specifying that lawsuits must be brought in a court with jurisdiction over the "center" of the seller's activity, *i.e.* its headquarters or principal place of business. Here, the undisputed facts show that the seller, Atlas Meble, is a Polish limited liability company (Pl. 56.1 Stmt. ¶ 3) that has its "registered office" in Poland (Def. 56.1 Stmt. ¶ 2). The language of the forum-selection clause thus appears to direct disputes to a court with jurisdiction over Atlas Meble's headquarters in Poland.[12]

Second, even assuming the clause is ambiguous, the Court arrives at the same result. It is undisputed that the Venture Agreement was drafted (in Poland) by Atlas Meble (*id.* ¶ 15), and thus any ambiguity should be construed against Plaintiff. *See Goldberg & Connolly v. New York Community Bancorp, Inc.,* 565 F.3d 66, 73 (2d Cir.2009). Moreover, both Bobko and Kaczor have submitted sworn affidavits

---

**12.** The Court notes that this interpretation of the language of the clause, as translated by Plaintiff's counsel, is consistent with the version of the clause provided by Defendants, who apparently retained an independent translation service to prepare their certified translation. (*See* Def. Mem., Ex. B, at PL000053 (Defendants' translation, which provides that disputes are to be heard in "the court with jurisdiction over the seller's registered office").) As identified in the Venture Agreement (under both translations), Atlas Meble is "registered in regional court in Poznan," a city in Poland. (Krol Decl., Ex. A, at PL000348; Def. Mem., Ex. B, at PL000047.)

stating that litigation in Poland was a term on which Atlas Meble insisted throughout the parties' negotiations of the Venture Agreement (Bobko Aff. ¶ 3; Kaczor Aff. ¶ 3), and Plaintiff has offered nothing to refute this extrinsic evidence of the contracting parties' intent. Thus, on the record presented, there is no genuine issue of material fact as to how the forum-selection clause should be interpreted. *See Prof'l Offshore Opportunity Fund, Ltd. v. Huifeng Bio–Pharmaceutical Technology, Inc.*, No. 11 Civ. 4321(LAK), 2011 WL 5598213, at *2 (S.D.N.Y. Nov. 15, 2011) (holding that where " 'the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law,' summary judgment is appropriate." (quoting *Faulkner v. Nat'l Geog. Soc'y*, 452 F.Supp.2d 369, 375–76 (S.D.N.Y.2006))).

Accordingly, the Court concludes that both the plain meaning of the forum-selection clause and all of the evidence in the record support the conclusion that the phrase "competent to the seat of the seller" means the court with jurisdiction over Atlas Meble's headquarters or principal place of business, which is in Poland.

### 3. *Whether the Parties and Claims Are Subject to the Forum–Selection Clause*

Having decided that the forum-selection clause is mandatory, the next step for the Court is to determine whether the parties and claims in this case are subject to that mandatory forum-selection clause. Although citing no case law or further elaborating on its objection, Plaintiff argues that the clause is unenforceable, because three of the Defendants are not parties to the Venture Agreement, and "several causes of action ... fall outside the scope of that particular venture agreement." (Pl. Reply, at 9.)

#### a. *Parties*

"[T]he fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Group v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir.2009) (citing cases). Courts have held that forum-selection clauses can be enforced against non-signatories who are "closely related" to a signatory, "such that 'enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound.' " *KTV Media Intern., Inc. v. Galaxy Group, LA LLC*, 812 F.Supp.2d 377, 386 (S.D.N.Y. 2011) (quoting *MGM Studios Inc. v. Canal + Distrib. S.A.S.*, No. 07 Civ. 2918(DAB), 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010)). Whether a party is closely related to a signatory is a fact-specific inquiry, but "it is well established that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Id.* (quoting *Atlasjet Uluslararasi Havacilik A.S. v. EADS Aeroframe Servs., LLC*, No. 07 Civ. 212(RJS), 2009 WL 436420, at *4 (S.D.N.Y. Feb. 17, 2009)) (collecting cases); *see also, e.g., LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F.Supp.2d 147, 161 (E.D.N.Y.2012) (holding non-signatory to be closely related to signatory, where evidence showed that the two companies were intimately connected); *Weingrad v. Telepathy, Inc.*, No. 05 Civ. 2024(MBM), 2005 WL 2990645, at *6 (S.D.N.Y. Nov. 7, 2005) (holding that defendants were closely related where plaintiff alleged that they acted in concert, and plaintiff's claims were substantially identical with respect to each defendant and arose out of the defendants' relationships with one another).

While this issue mainly arises where the party resisting enforcement of the forum-

selection clause is a non-signatory, courts have allowed "closely related" non-signatories to invoke forum-selection clauses as well. *See Thibodeau v. Pinnacle FX Investments,* No. 08–CV–1662 (JFB)(ARL), 2008 WL 4849957, at *5 n. 4 (E.D.N.Y. Nov. 6, 2008) ("[T]he Court concludes, as a matter of law, that the clause can be invoked in this case by the signatory ... as well as [non-signatory defendants].... [B]ecause [the non-signatory defendants] are alleged to be principals [of the signatory corporation] and are being sued in connection with their activities at [the signatory], it was foreseeable to plaintiff that the forum selection clause would be applicable to any lawsuit against these closely-related individuals in connection with their work at [the signatory].")

Here, the party resisting enforcement of the forum-selection clause—Plaintiff, as nominee for Atlas Meble—does not, nor could it, contest that it is subject to the forum-selection clause, notwithstanding the fact that it is not a signatory to the Venture Agreement. *See Diesel Props S.r.L. v. Greystone Bus. Credit II LLC,* No. 07 Civ. 9580(HB), 2008 WL 4833001, at *12 (S.D.N.Y. Nov. 5, 2008) ("Under New York law, an assignee cannot sue to enforce its rights under the contract without also assuming the other terms of the contract, including a forum selection clause." (quoting *GMAC Comm. Credit, LLC v. Dillard Dep't Stores, Inc.,* 198 F.R.D. 402, 407 (S.D.N.Y.2001))). Instead, Plaintiff objects to the invocation of the forum-selection clause by the non-signatory defendants.

■ According to Plaintiff, there were three non-parties to the Venture Agreement (Affordable Kitchens, Atlas Kitchens, and Denton) leaving Global, Bobko, and Kaczor as the alleged signatories. (Pl. Reply, at 9.) Bobko and Kaczor actually dispute that they signed the Agreement in their individual capacities, contending they signed only on behalf of Global, and the language of the Venture Agreement itself appears to support this. (*See* Krol Decl., Ex. A, at PL000348 (Agreement stating that Bobko and Kaczor appeared "in the name of" Global).) The Court, however, need not resolve this issue, as, regardless of whether Bobko and Kaczor are treated as signatories or non-signatories to the Venture Agreement, they are undoubtedly "closely related" to Global. They were two of the four shareholders of Global, and, at a minimum, they did sign the Venture Agreement on Global's behalf. The record also indicates that they were Global's chief communicators with Atlas Meble with respect to the two Orders that Global placed. (*See* Def. Mem., Exs. A, A–1.) Under these circumstances, it was certainly foreseeable that Bobko and Kaczor would seek to invoke the forum-selection clause as to any claims asserted against them by Plaintiff, arising out of their involvement with Global, and they are entitled to do so. *See, e.g., Firefly Equities, LLC v. Ultimate Combustion Co.,* 736 F.Supp.2d 797, 799–800 (S.D.N.Y.2010) (finding corporate president who signed contract on behalf of company "closely related" to company) (collecting cases).

As for non-signatories Affordable Kitchens, Atlas Kitchens, and Denton, while it is likely that these entities are also "closely related" to Global, this is ultimately irrelevant because, for the reasons discussed in the next section, below, Plaintiff's claims against these companies (as well as Plaintiff's claims against Bobko, relating to his involvement with Affordable Kitchens and Atlas Kitchens) cannot be found to arise under the Venture Agreement in the first place. As these claims do not arise under the Agreement, they are not subject to the forum-selection clause contained in the Agreement.

#### b. *Claims*

The next issue is whether, or to what extent, Plaintiff's claims in this action are subject to the forum-selection clause. The clause itself states that it applies to "[a]ll disputes arising out of this agreement," *i.e.*, the Venture Agreement. (Krol Decl., Ex. A, at PL000354.)

██ "The scope of [a] forum selection clause is a contractual question that requires the courts to construe the clause and, where ambiguous, to consider the intent of the parties." *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 33 (2d Cir.1997). A court thus must "examine the substance of [the] claims, shorn of their labels" and compare how they relate to the language of the given forum-selection clause. *Phillips*, 494 F.3d at 388.

In *Phillips*, the Court of Appeals addressed a similar forum-selection clause to the one at issue here and narrowly construed the term "arising out of" as meaning "to originate from a specified source." *Id.* at 390 (citing Webster's Third New International Dictionary 117 (1981)). The court held that "arising out of" did not mean "encompassing all claims that have some possible relationship with the contract, including claims that may only 're- late to,' 'be associated with,' or 'arise in connection with' the contract." *Id.* Applying its construction of the parties' contract language to the underlying facts in *Phillips*, the Court of Appeals held that the plaintiff's federal copyright claims did not originate from their recording contract because the plaintiff, the party resisting en-

forcement of the forum-selection clause, did "not rely on the recording contract to establish his ownership of the relevant copyrights, but on his authorship of the work." *Id.* at 390–91.

Here, as discussed below, and unlike the claims in *Phillips*, all of Plaintiff's claims against Global and Kaczor, and some of its claims against Bobko, arise out of the Venture Agreement. Plaintiff's claims against Affordable Kitchens, Atlas Kitchens, Denton, and Bobko (as the alter ego of Affordable Kitchens and Atlas Kitchens), however, do not arise out of the Agreement.

#### i. *Claims Against Global, Kaczor, and Bobko (Based on the Global Transactions)*

██ Plaintiff alleges that Global breached the Venture Agreement and Order Contracts [13] by failing to make payment "as required by" those agreements. (Compl. ¶¶ 36–40.) Plaintiff also seeks to pierce the corporate veil and hold Kaczor and Bobko liable for Global's conduct, or to hold Kaczor and Bobko personally liable for the transactions executed under the Venture Agreement. (*See* Pl. Mem., at 15–16; Pl. 56.1 Stmt. ¶¶ 12, 13, 28.) Any claims based on a breach of the Venture Agreement are plainly subject to the forum-selection clause, including Plaintiff's claims for breach of contract against Global, Kaczor, and Bobko (based on Global's orders). As in *Phillips*, the "contract claim for money owed and due falls squarely under the forum-selection clause: the contract establishes [Plaintiff's] right to receive, and [Defendants'] duty to pay"

---

**13.** The analysis is the same regardless of whether Plaintiff phrases its claim in terms of a breach of the Venture Agreement or a breach of the Order Contracts, as the Order Contracts are expressly governed by the provisions of the Venture Agreement. (See Krol Decl., Ex. A, at PL000348–50 (Section 1 of Venture Agreement, providing that the parties will enter into "sales agreements" and that the "language of the sales agreements not [e]numerated in the offer of the seller and the confirmation of the purchaser will be filled in accordance with this agreement").)

for goods received and "sets forth the relevant conditions." 494 F.3d at 387.

Plaintiff's other claims against Global, Kaczor, and Bobko (based on Global's orders)—for goods sold and delivered, unjust enrichment, and account stated—also arise out of the Venture Agreement, as they are based on alleged rights and duties stemming from the Agreement. In its claim for goods sold and delivered, Plaintiff alleges that Atlas Meble delivered the goods to Global "in accordance with" the Order Contracts (made under the Venture Agreement), and that Atlas Meble did not receive payments due from these sales, as required by the Uniform Commercial Code ("UCC"). (Compl. ¶¶ 41–47.)[14] In its claim for unjust enrichment, Plaintiff explicitly asserts that Defendants "failed to pay the amount due on the delivered goods pursuant to each Order Contract" and that Defendants have been unjustly enriched by keeping the received goods without payment. (Id. ¶¶ 49, 53.) In its claim for account stated, Plaintiff alleges that Atlas Meble produced, sold and delivered furniture to Global, that Global refused payment, and that the parties had an agreement that Global would pay. (Id. ¶¶ 30–34.) Resolution of each of these claims requires an analysis of Atlas Meble's rights and duties under the Venture Agreement (and, by extension, the Order Contracts), which govern all sales and delivery of furniture from Atlas Meble to Global; therefore each claim must be said to arise out of the Venture Agreement. See Cfirstclass Corp. v. Silverjet PLC, 560 F.Supp.2d 324, 330 (S.D.N.Y.2008) (applying forum-selection clause to all of plaintiff's claims where claims were "expressly premised on assertions regarding [plaintiff's] rights ... pursuant to two agreements ... and resolution of these claims [would] thus necessarily require analysis of the parties' rights and duties under the agreements").

### ii. Claims against Affordable Kitchens, Atlas Kitchens, Denton, and Bobko (as Alter Ego of Affordable Kitchens and Atlas Kitchens )

Whether the claims against Affordable Kitchens, Atlas Kitchens, Denton, and Bobko (based on his involvement with Affordable Kitchens and Atlas Kitchens), are subject to the forum-selection clause is a different question. Defendants argue that "[a]ll of the Plaintiff's claims in the instant action sound in contract and are based on rights and duties originating from the underlying Venture Agreement," without providing a factual or legal theory for how the terms of the Venture Agreement apply to these non-signatory defendants. (Def. Mem., at 11.) Plaintiff does not contend that there is any explicit written agreement between Atlas Meble, on the one hand, and Affordable Kitchens, Atlas Kitchens, or Denton, on the other, but rather asserts that the "existence of a contractual relationship can be imputed to the fact that Atlas Meble shipped and ordered furniture to the[se] [d]efendants." (Pl. Mem., at 11.) Plaintiff argues that Bobko is the alter ego for Atlas Kitchens and Affordable Kitchens and is therefore liable for any balances owed by these entities.[15]

---

14. Although Plaintiff lists two separate causes of action in its complaint for goods sold and delivered (see Compl. ¶¶ 41–45 ("Third Cause of Action—Goods Sold and Delivered" (not citing any provision of the UCC))); id. ¶¶ 46–47 ("Fourth Cause of Action—Sale of Goods Breached by Buyer" (citing a different provision of the UCC than the one relied on here)), in its brief, Plaintiff appears to combine these two causes of action into one claim and argues that it is entitled to recovery under Section 2-709 of the New York UCC (Pl. Mem., at 10–11).

15. In its arguments for piercing the corporate veil, discussed infra, Plaintiff also tries to argue that Bobko signed the Venture Agreement

Plaintiff's contract claims against Affordable Kitchens, Atlas Kitchens, and Denton do not arise out of the Venture Agreement. The plain language of the Venture Agreement states that it is between Global and Atlas Meble, the Agreement only purports to govern claims between these two entities; and Plaintiff has not pointed to any evidence that other entities were subject to the Agreement's terms. For the same reasons, any non-contract claims that Plaintiff is asserting against Affordable Kitchens, Atlas Kitchens, and Denton must be based on duties or obligations existing separate and apart from the Venture Agreement.

Given that the forum-selection clause only covers disputes arising out of the Venture Agreement, Plaintiff's claims against Affordable Kitchens, Atlas Kitchens, Denton, and Bobko (as the alter ego of Affordable Kitchens and Atlas Kitchens), are not subject to the forum-selection clause.

### 4. *Whether Enforcement of the Forum–Selection Clause Is Unreasonable*

 Where, as here, the first three prongs of the *Phillips* test are satisfied (at least with respect to certain defendants and claims), the forum-selection clause is accorded a presumption of enforceability

against Plaintiff. Dismissal of the claims that are subject to the clause is appropriate unless Plaintiff "makes a prima facie showing that the clause should be set aside." *Phillips,* 494 F.3d at 392 (citing *M/S Bremen,* 407 U.S. at 15, 92 S.Ct. 1907; *New Moon Shipping,* 121 F.3d at 29). The forum-selection clause should not be set aside, unless "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Id.*

 Plaintiff has failed to make a showing sufficient to justify setting aside the clause in this case. Plaintiff's sole argument in this regard is that it would be unjust to enforce the forum-selection clause because it would be "impossible for the Polish courts to establish personal jurisdiction over any of the Defendants in Poland." (Pl. Reply, at 9.) Yet, the potential unavailability of certain claims, or even the entire action, in the selected forum is insufficient to make the forum-selection clause unreasonable or unjust. *See BNY AIS Nominees Ltd. v. Quan,* 609 F.Supp.2d 269, 278 (D.Conn.2009) (holding that the potential unavailability of certain

in his individual capacity and that "[b]ecause [the Venture Agreement] is the only written agreement, the only conclusion to be drawn is that Bobko intended to be personally liable for the orders from Atlas Meble, *no matter on behest of which entity he placed the order.*" (Pl. Mem., at 15 (emphasis added).) Even if Bobko had signed the Venture Agreement personally, this would only indicate a personal guaranty with respect to the Global transactions, as there is absolutely no evidence in the record that the Venture Agreement was intended to cover transactions with any other entity. The first sentence of the Agreement clearly states that it is an agreement between Global and Atlas Meble, which are defined as

"Purchaser" and "Seller," respectively, and the entirety of the Agreement speaks in terms of Global's and Atlas Meble's responsibilities. There is no mention, anywhere in the Agreement, of any other another entity or of purchases made on behalf of any individual. Indeed, according to the dates on the allegedly unpaid invoices, all of Affordable Kitchens's orders were placed in 2006, *prior* to the execution of the Venture Agreement. (*See* Krol Decl. Ex. G.) Plaintiff has not offered any evidence or case law to support its conclusory argument that a personal guaranty by Bobko in the Global transaction would somehow extend to orders he placed on behalf of any other entities.

legal theories in selected forum was insufficient to render forum-selection clause unreasonable or unjust); *see also New Moon Shipping,* 121 F.3d at 32–33 (expressing concerns with considering statute of limitations, when determining reasonableness of forum selection). '

 Moreover, Plaintiff has not provided any evidence in support of its contention that Polish courts would lack personal jurisdiction over any of the Defendants, let alone Global, Kaczor, or Bobko—the only defendants capable of enforcing the clause. "Unsubstantiated speculation that no remedy is available in the designated forum .... is wholly inadequate to meet the heavy burden [Plaintiff] bear[s] to show unreasonableness." *New Moon Shipping,* 121 F.3d at 33. Accordingly, the Court finds that the forum-selection clause is enforceable.

### B. *Whether Global, Kaczor, or Bobko Waived Enforcement of the Forum–Selection Clause*

Plaintiff also objects to enforcement of the forum-selection clause by Global, Kaczor, and Bobko, on the ground that they waived any right to invoke the forum-selection clause "by failing to object as to venue" and "not pleading it as an affirmative defense." (Pl. Reply, at 8.)

 There is, however, "a 'strong public policy' in favor of enforcing forum selection clauses, and as such, waiver of a forum selection clause 'should not be found lightly.' " *Wachovia Bank Nat'l Ass'n v. EnCap Golf Holdings, LLC,* 690 F.Supp.2d 311, 327 (S.D.N.Y.2010) (citations omitted); *cf. Rush v. Oppenheimer & Co.,* 779 F.2d

885, 887 (2d Cir.1985) ("Waiver [of the right to arbitrate] is not to be lightly inferred."); *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 517, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) ("A forum selection clause is 'an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction.' " (quoting *M/S Bremen,* 407 U.S. at 13–14, 92 S.Ct. 1907)). Moreover, although, as Plaintiff would urge, courts have often viewed forum-selection clauses as merely raising a "venue" issue, and have thus strictly applied the waiver rule that would be applicable to a venue defense—*i.e.,* that reliance on the clause is waived if not raised in a first responsive pleading or Rule 12(b)(3) motion made in lieu of answering,[16] *see, e.g., BAX Global, Inc. v. Ocean World Lines, Inc.,* No. 07 Civ. 10457(NRB), 2009 WL 3001816, at n. 7 & *4 (S.D.N.Y. Sept. 18, 2009)—other courts have viewed the issue under broader waiver principles, *see, e.g., In re Rationis Enterprises, Inc. of Panama,* No. 97 Civ. 9052(RO), 1999 WL 6364 (S.D.N.Y. Jan. 7, 1999), or have employed contract principles in their analyses, *see, e.g., Am. Int'l Group Eur. S.A. (Italy) v. Franco Vago Int'l, Inc.,* 756 F.Supp.2d 369, 380 (S.D.N.Y.2010); *see also Ferraro Foods, Inc. v. M/V Izzet Incekara,* No. 01 Civ. 2682(RWS), 2001 WL 940562, at *3 (S.D.N.Y. Aug. 20, 2001) (analyzing motion to enforce forum-selection clause under both a venue and contract theory). On the facts presented here, and in light of the strong public policy against finding waiver of forum-selection clauses, this Court finds that Plaintiff's narrow waiver argument is unpersuasive.

**16.** In this case, while Global, Kaczor, and Bobko have at least nominally attempted to bring their motion under Rule 12(b)(3) (*see* Notice of Defendants' Cross–Motion to Dismiss or for Summary Judgment, dated Sept. 21, 2012 ("Def. Motion") (Dkt. 55) (citing Rule 12(b)(3), as well as Rule 56, in the alternative)), they have already answered the Complaint and completed discovery, and thus a Rule 12(b) motion at this stage would be procedurally improper.

■ As a preliminary matter, the Court notes that there is no specific Federal Rule of Civil Procedure designed to request dismissal of a suit based upon a valid forum-selection clause. *See Trade-Comet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir.2011) ("[N]either the Supreme Court, nor this Court, has 'specifically designated a single clause of Rule 12(b)'—or an alternative vehicle—'as the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause.'" (quoting *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir.2006))). As a result, there is no clear consensus among courts as to the proper procedural mechanism for moving for dismissal of an action based on a forum-selection clause, and the Second Circuit has "affirmed judgments that enforced forum selection clauses by dismissing cases for lack of subject matter jurisdiction under Rule 12(b)(1), for improper venue under Rule 12(b)(3), and for failure to state a claim under Rule 12(b)(6)." [17] *Id.* (internal citations omitted); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 588–89, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (enforcing a forum-selection clause through a motion for summary judgment); *Rogen v. Memry Corp.*, 886 F.Supp. 393, 396–97 (S.D.N.Y.1995) (same).

Perhaps in light of this confusion, some courts have simply reasoned that "'a forum selection clause will be deemed waived if the party invoking it has taken actions inconsistent with it, or delayed its enforcement, and other parties would be prejudiced.'" *In re Rationis Enterprises*, 1999 WL 6364, at *2 (quoting *In re Deleas Shipping Ltd.*, 1996 A.M.C. 434 (W.D.Wash.1995)); *see also Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F.Supp.2d 585, 605 (S.D.N.Y.2010) ("A Court may infer waiver where a long delay has caused prejudice to the opposing party." (citing *Mateco Inc. v. M/V Elli*, 103 F.Supp.2d 70, 73 (D.P.R. 2000))).

In *Fendi*, for example, the court held that no waiver had occurred, even though the third-party defendant had only answered the complaint with a generic Rule 12(b)(6) defense, had waited three years to invoke the forum-selection clause, and had participated in discovery. 689 F.Supp.2d at 605. In so concluding, the court primarily relied on the fact that the third-party plaintiff, who was fully aware of the forum-selection clause prior to bringing the action, failed to allege any prejudice it would suffer from the enforcement of the clause. *Id.* at 605–06. ("[The third-party plaintiff] made the decision to bring this case in this Court with full knowledge of the forum-selection clause it drafted, and has alleged no prejudice that will result from the enforcement of that clause.").

■ Here, while neither Global, Kaczor, nor Bobko asserted the forum-selection clause as an affirmative defense in its Answer to the Complaint, each did deny Plaintiff's allegation that venue was prop-

---

**17.** Although courts have also dismissed cases under Rule 12(b)(1) based on enforceable forum-selection clauses, the Supreme Court and Second Circuit have made clear that a valid forum-selection clause does not deprive the court of subject-matter jurisdiction over the claim or personal jurisdiction over the defendant. *See M/S Bremen*, 407 U.S. at 12, 92 S.Ct. 1907; *New Moon Shipping*, 121 F.3d at 28 (citations omitted). Similarly, despite the approach of many courts in applying Rule 12(b)(3) to motions to dismiss based on forum-selection clauses, courts have acknowledged that a valid forum-selection clause does not "deprive the disfavored forum of ... venue, where the conditions of ... proper venue are otherwise met." *Licensed Practical Nurses, Technicians & Health Care Workers of NY., Inc. v. Ulysses Cruises, Inc.*, 131 F.Supp.2d 393, 409 (S.D.N.Y.2000).

er,[18] and a number of other factors generally militate in favor of finding that no waiver occurred. None of these defendants ever affirmatively represented to the Court that this was the appropriate forum to resolve the parties' disputes about the Venture Agreement. *Cf. BAX Global*, 2009 WL 3001816, at *4; *see also Diesel Props S.r.L.*, 2008 WL 4833001, at *15 ("Plaintiffs have never represented that this venue is the appropriate forum for the causes of action brought by Defendants."). Further, the motion that these defendants have now brought primarily seeks enforcement of the forum-selection clause, and, although they conducted discovery before bringing the motion, it is their first motion to the Court. *See Fendi*, 689 F.Supp.2d at 605 (finding no waiver where, *inter alia*, third-party defendant moved to dismiss after participating in discovery).[19]

Most importantly, although Defendants did not bring their motion to enforce the forum-selection clause for more than a year, Plaintiff has failed to show any prejudice that "it will suffer from the enforcement of the forum selection clause that it authored itself." *Id.* As nominee for the drafter of the Agreement, Plaintiff was certainly aware of the forum-selection clause prior to bringing this action, and, as discussed *supra* (*see* Discussion, Part II(A)(4)), Plaintiff failed to make a specific showing that it will suffer prejudice from the clause's enforcement, *Fendi*, 689 F.Supp.2d at 605; *see also Ferraro Foods*, 2001 WL 940562, at *4 ("Nor does mere delay prejudice the plaintiff"); *LPR*, 2000 WL 973748, at *7 (finding no waiver where, *inter alia*, plaintiff was a party to the contract containing forum selection clause and plaintiff failed to show that it would be prejudiced by enforcement of the clause).

Finally, to the extent it is sensible to analyze forum-selection clauses under contract law, *see Am. Int'l Group Eur.*, 756 F.Supp.2d at 380, contract principles dictate that no waiver should be found in this case. Courts adopting this approach have reasoned:

"It seems incorrect to treat [a forum selection clause] as defeating venue in the non-preferred forum ... [because] venue ... is defined by statute at 28 U.S.C. § 1391, which sets forth where venue may properly be laid. The determination of the appropriate venue under § 1391 revolves around [various factors listed in that statute, which do not include forum-selection clauses.] Venue, as

---

**18.** (*See* Answer, dated Nov. 1, 2010 ("Global Answer") (Dkt. 10), ¶ 4; Answer, Counterclaim, and Cross–Claim, dated Oct. 15, 2010 ("Bobko and Atlas Kitchens Answer" or "Bobko Answer") (Dkt. 7), ¶ 4; Answer and Cross-claim, dated Sept. 13, 2010 ("Denton and Kaczor Answer" or "Kaczor Answer") (Dkt. 6), ¶ 4.) In addition, each of these defendants asserted a defense that Plaintiff's Complaint failed to state a claim (*see* Global Answer ¶ 54; Bobko Answer ¶ 54; Kaczor Answer ¶ 54), which could technically capture the forum-selection-clause defense, given that some courts have found that Rule 12(b)(6) is the appropriate mechanism for a dismissal based on a forum-selection clause, *see Licensed Practical Nurses*, 131 F.Supp.2d at 408 & n. 18 (citing *Central Contracting Co. v. Maryland Cas. Co.*, 367 F.2d 341, 342 (3d

Cir.1966); *LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.*, 739 F.2d 4 (1st Cir. 1984)).

**19.** Although not argued by Plaintiff, the fact that Bobko and Atlas Kitchens filed a counterclaim is also not a basis for finding that waiver occurred here. The counterclaim is not based on the Venture Agreement or governed thereby, but rather asserts rights under an entirely separate agreement. *See Diesel Props S.r.L*, 2008 WL 4833001, at *15 (no waiver where claims made by party invoking the forum selection clause were subject to a different contract); *LPR, SRL v. Challenger Overseas, LLC*, 2000 WL 973748, at *7 (S.D.N.Y. July 13, 2000) (same).

that term is defined by Congress, is proper in this district.... The fact that the parties contractually agreed to litigate disputes in another forum is not a question of venue, but one of contract, which will be enforced unless fundamentally unfair."

*Id.* at 379–80 (quoting *Licensed Practical Nurses,* 131 F.Supp.2d at 404–05) (internal quotation marks omitted). Employing contract law to determine whether a party has waived a forum-selection clause would be supported by the Supreme Court's language in *Bremen,* which instructs that a court "may 'specifically enforce the forum clause' by declining to 'exercise its jurisdiction to do more than give effect to the legitimate expectations of the parties.'" *Licensed Practical Nurses,* 131 F.Supp.2d at 408 (quoting *M/S Bremen,* 407 U.S. at 12, 92 S.Ct. 1907). As noted in *Licensed Practical Nurses,* "[t]his is not the language of faulty venue, but the language of contract law." *Id.* Utilizing a contract analysis would also be supported by the fact that the parties are, at essence, "asking the court to enforce the contractual obligations agreed upon by the parties." *Am. Int'l Grp. Eur.,* 756 F.Supp.2d at 379; *see also Bense v. Interstate Battery System of America,* 683 F.2d 718, 721 (2d Cir.1982) ("The forum-selection clause was part of the bargain into which [plaintiff] freely entered.").

 "A party has waived a contractual right when it voluntarily and intentionally abandons the enforcement of that right." *Am. Int'l Grp. Eur.,* 756 F.Supp.2d at 380 (citing *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.,* 448 F.3d 573, 585 (2d Cir. 2006)). There must be a "'clear manifestation of an intent by [the waiving party] to relinquish her known right and mere silence, oversight or thoughtlessness in failing to object to a breach of the contract will not support a finding of waiver.'" *Id.*

(quoting *Beth Israel,* 448 F.3d at 585). Thus, in *American International Group Europe,* the court held that the defendant waived its right to enforce a forum-selection clause where it failed to assert the forum-selection clause in its answer or during the first 11 months of the pending litigation, and where the defendant's conduct was inconsistent with an intent to preserve its rights under the clause. *Id.* The defendant, in that case, "availed itself of th[e] forum by attempting to implead third-party defendants and filing several affidavits, affirmations, and memoranda of law with the Court—all *before* it asserted the forum selection clause in its brief in opposition to [plaintiffs'] motion for summary judgment." *Id.*

Here, in contrast, Global, Kaczor, and Bobko did not demonstrate a clear intent to relinquish their rights to enforce the forum-selection clause. This is not a case where the party invoking the clause filed affidavits, affirmations, and substantive memoranda *prior* to raising the issue of the forum-selection clause, filed affirmations urging the court to enforce one forum selection clause and then later invoking another, or only raised the forum-selection clause in its opposition to the plaintiff's motion. *See Am. Int'l Grp. Eur.,* 756 F.Supp.2d at 374–75, 380; *id.* at 380 ("In fact, [defendant] has not moved to dismiss the claims against it at all; it only asserts the forum selection clause in an effort to defeat [plaintiffs'] motion for summary judgment."). To the contrary, Global, Kaczor, and Bobko affirmatively raised the forum-selection clause in their first motion before the Court, which was also their first substantive filing since they filed their Answers.

Based on the above, the Court finds that Global, Kaczor, and Bobko did not waive their rights to rely on the forum-selection clause in the Venture Agreement, and that the clause should be enforced as to these

defendants. Plaintiff's claims in this action against Global, Kaczor, and Bobko (based on any of Plaintiff's transactions with Global), are therefore dismissed with prejudice.

### III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST THE REMAINING DEFENDANTS

Plaintiff argues that it is entitled to summary judgment, as against all Defendants, on its claims for account stated, breach of contract, and goods sold and delivered.[20] Plaintiff also seeks to pierce the corporate veils of the dissolved entities and hold the individual defendants liable for their conduct. Given that, based on the forum-selection clause, the Court is dismissing all of Plaintiff's claims against Global and Kaczor,[21] and some of Plaintiff's claims against Bobko, the Court will only address Plaintiff's summary judgment motion to the extent Plaintiff seeks judgment on its claims against Affordable Kitchens, Atlas Kitchens, and Denton, and its remaining claims against Bobko. For the following reasons, Plaintiff's motion for summary judgment on its claims against each of these remaining defendants fails.

### A. Legal Elements of Plaintiffs Claims [22]

#### 1. Account Stated

" 'Under ... New York law, an account stated refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due.' " *Lankler Siffert & Wohl LLP v. Rossi,* 287 F.Supp.2d 398, 407 (S.D.N.Y. 2003) (quoting *Hackensack Cars, Inc. v. Lifestyle Limousine Service Corp.,* No. 87 Civ. 2764, 1990 WL 74885, at *4 (S.D.N.Y. May 25, 1990)). In order to prevail on a claim for account stated, the plaintiff has the burden to show that: "(1) an account was presented; (2) it was accepted as correct; and (3) the debtor promised to pay the amount stated." *IMG Fragrance Brands, LLC v. Houbigant, Inc.,* 679 F.Supp.2d 395, 411 (S.D.N.Y.2009) (quoting *The Haskell Co. v. Radiant Energy Corp.,* No. 05–CV–4403, 2007 WL 2746903, at *12 (E.D.N.Y. Sept. 19, 2007)); *see also LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham* 185 F.3d 61, 64 (2d Cir.1999) ("[A claim for accounts-stated] ... requires an agreement between the parties to an account based upon prior transactions between them ....") (citation and quotation marks omitted).

The second and third elements of account stated "may be implied if a 'party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment.' " *IMG Fragrance Brands,* 679 F.Supp.2d at 411 (quoting *LeBoeuf,* 185 F.3d at 64). "Conversely, 'an

---

**20.** In its Complaint, Plaintiff also asserts a claim for unjust enrichment. Plaintiff does not specifically address this claim in its summary judgment papers, despite purporting to move for summary judgment on all of its claims.

**21.** Plaintiff's claims against Kaczor are dismissed in full because Plaintiff explicitly only seeks to hold Kaczor personally liable in connection with Global transactions. (*See* Pl. Mem., at 19.)

**22.** On its state-law claims, Plaintiff cites New York law (Pl. Mem., at 5–9) and explicitly

consents to the application of New York law (Pl. Reply, at 9). Defendants' motion is silent on the choice-of-law question, but Defendants cite New York law in their opposition to Plaintiff's motion. (Def. Mem., at 12.) Such "implied consent ... is sufficient to establish choice of law." *Khubani v. Ionic White, Inc.,* No. 05 Civ. 3706(DC), 2008 U.S. Dist. LEXIS 30610, at *3, 2008 WL 878717, at *1 (S.D.N.Y. Apr. 3, 2008) (citing *In re Tehran–Berkeley Civil & Environmental Engineers,* 888 F.2d 239, 242 (2d Cir.1989)).

allegation of a timely objection to the account, whether ultimately meritorious or not, will generally defeat a summary judgment motion on an account stated.'" *Premier Steel, Inc. v. Hunterspoint Steel LLC*, No. 10 Civ. 4206(JCF), 2010 WL 5248583, at *3 (S.D.N.Y. Dec. 16, 2010) (quoting *Sid Paterson Advertising, Inc. v. Giuffre Auto Group, LLC*, No. 601905/05, 17 Misc.3d 1127(A), 2007 WL 3378349, at *2 (Sup.Ct.N.Y.Cty. Oct. 29, 2007)).

■■■■■ Similarly, courts have held that summary judgment on an account stated claim is inappropriate where the evidence shows that there was a dispute about the account or the quality of the work performed. *See, e.g., Abbott, Duncan & Wiener v. Ragusa*, 214 A.D.2d 412, 413, 625 N.Y.S.2d 178 (1st Dep't 1995); *DiMare Homestead, Inc. v. Alphas Co. of New York, Inc.*, No. 09 Civ. 6644(PKC), 2012 WL 1155133, at *22 (S.D.N.Y. Apr. 5, 2012) ("Under New York law, 'an account is not agreed to where the defendant has raised an objection to the plaintiff's billings or the quality of the plaintiffs work.' Even 'a general objection [that] precedes the plaintiff's statement of an account' will bar the existence of an agreement to treat an invoice as an account stated." (quoting *United Capital Funding Corp. v. N.Y. City Dep't of Ed.*, 457 Fed.Appx. 53, 55 (2d Cir.2012) (collecting cases))). On the other hand, " 'unsubstantiated claims of oral objections do not create a material issue of fact' sufficient to defeat summary judgment." *Premier Steel*, 2010 WL 5248583, at *3 (quoting *White Diamond Co. v. Castco, Inc.*, 436 F.Supp.2d 615, 624 (S.D.N.Y. 2006)). "The party challenging the account must 'raise specific allegations of protest, indicating when, how, and/or to whom objections were made, along with some indication of the content of the conversation(s) had.'" *Id.* (quoting *Goldberg & Connolly v. Hancock Industries, Ltd.*,

No. 11258/06, 15 Misc.3d 1140(A), 2007 WL 1532294, at *2 (N.Y.Dist.Ct. Nassau Cty. May 29, 2007)).

### 2. *Goods Sold and Delivered*

■■■■■ Under the New York UCC, to recover on a claim for goods sold and delivered, a plaintiff must show that: (1) it had a contract with the buyer; (2) the buyer failed to pay the purchase price; and (3) the buyer accepted the goods. *See Weil v. Murray*, 161 F.Supp.2d 250, 254–55 (S.D.N.Y.2001); N.Y.U.C.C. § 2–709(1)(a). The UCC further instructs that "[t]he buyer must pay at the contract rate for any goods accepted." *See* N.Y.U.C.C. § 2–607(1). "[A]cceptance of goods occurs where the buyer: (1) has a reasonable opportunity to inspect goods and 'signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity'; (2) does not effectively reject the goods; or (3) 'does any act inconsistent with the seller's ownership.'" *Movado Group, Inc. v. Caseiko Trading Co., Inc.*, 912 F.Supp.2d 109, 114 (S.D.N.Y.2012) (quoting N.Y.U.C.C § 2–606(a)–(c)). An effective rejection of goods "must be within a reasonable time after their delivery or tender. [A rejection] is ineffective unless the buyer seasonably notifies the seller." N.Y.U.C.C. § 2–602.

### 3. *Breach of Contract*

Under New York law, a claim for breach of contract requires proof of: (1) the existence of a contract; (2) that the plaintiff performed his or her obligations under the contract; (3) that the defendant failed to perform his or her obligations thereunder; and (4) resulting damages to the plaintiff. *See Crowley v. VisionMaker, LLC*, 512 F.Supp.2d 144, 151 (S.D.N.Y.2007); *see also First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir.1998).

### B. Triable Issues of Fact Exist as to Plaintiff's Claims Against Each Remaining Defendant

#### 1. Affordable Kitchens

Plaintiff alleges that Affordable Kitchens owes an outstanding balance of $29,526.74 for products it ordered from Atlas Meble. Plaintiff submits invoices, and associated shipping records, with the following dates and amounts: April 7, 2005 ($28,893.37), August 11, 2005 ($3,902.91), June 23, 2006 ($792.07), June 29, 2006 ($27,300.68), July 5, 2006 ($15,885.41), July 6, 2006 ($4,176.22), October 4, 2006 ($1,180.00), October 23, 2006 ($556.00), and April 5, 2006 ($949.15). (Krol Decl., Ex. G.) [23] None of these records are signed by anyone from Affordable Kitchens.

As an initial matter, Defendants contest the admissibility of all of the invoices. Specifically, Defendants argue that Glodz, testifying at a deposition as Plaintiff's corporate representative, was unable to provide the information necessary to have the invoices admitted into evidence because he lacked personal knowledge about their contents and their preparation by Atlas Meble's billing/accounting department. (Def. Mem., at 3, 4.) [24] Plaintiff contends that the invoices are business records, that Glodz properly authenticated them, and that the documents are therefore admissible. (Pl. Reply, at 3.)

■■■■■■ "The principles governing admissibility of evidence do not change on a motion for summary judgment." *Raskin*

v. *Wyatt Co.*, 125 F.3d 55, 66 (2d Cir.1997). Under Rule 803(6) of the Federal Rules of Evidence, records that would otherwise be inadmissible as hearsay are admissible if:

(A) the record was made at or near the time by ... someone with knowledge; (B) ... was kept in the course of a regularly conducted activity of a business, ...; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) ...; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed.R.Evid. 803(6). In order to authenticate business records, "[t]he 'custodian need not have personal knowledge of the actual creation of the document to lay a proper foundation ... nor is there any requirement under Rule 803(6) that the records be prepared by the party who has custody of the documents and seeks to introduce them into evidence.'" *Health Alliance Network, Inc. v. Continental Cas. Co.*, 245 F.R.D. 121, 130 (S.D.N.Y.2007) (quoting *Phoenix Associates III v. Stone*, 60 F.3d 95, 101 (2d Cir.1995)). To be a qualified witness, the person who testifies need only show that he is "familiar with the record-keeping system of the business in question and [knows] how the records were created." Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence

---

**23.** Duplicate copies of these invoices and shipping records, along with duplicates of some of the invoices and shipping records pertaining to other defendants, are included in Exhibit G, but there does not appear to be any reason for this other than mistake.

**24.** Defendants also argue Glodz lacked knowledge to explain which invoices corresponded to which ordered goods and could not provide records of any of the orders that

supposedly gave rise to the invoices (*see* Def. Mem., at 4 (citing Krol Decl., Ex. D (Transcript of deposition of Tomasz Glodz, conducted Nov. 22, 2011), at 67–75)), but this argument appears to be less of a challenge to the admissibility of the invoices, and more a challenge to the weight of the overall evidence put forward by Plaintiff to support its claims.

Manual, § 16.07(2)(c) (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.) (2012).

■ Here, Glodz, a trade director at Atlas Meble (Krol Decl., Ex. D, at 6:10–11), testified that the invoices and billing records were prepared by Atlas Meble's accounting department (*id.* at 66:8). In answering questions regarding the invoices, Glodz demonstrated an understanding of their components, sufficient to show that he was familiar with the record-keeping system and was therefore "qualified," under Rule 803(6), to testify about the invoices. (*Id.* at 67:22–68:5.) Nonetheless, Plaintiff has not pointed the Court to any testimony by Glodz establishing that the invoices were "made at or near the time" of the transactions, or that they were "kept in the course of a regularly conducted business activity" and that it was "the regular practice of that business activity to make the … record[s]." Fed. R.Evid. 803(6). Plaintiff certainly does not submit an affidavit from a document custodian certifying that the elements of Rule 803(6) have been satisfied, instead merely arguing in its brief that Atlas Meble, itself, knows that the invoices "were kept in the ordinary course of business" and that this is "consistent with Mr. Glodz's testimony." (Pl. Reply, at 2.) Plaintiff's argument misses the mark—Plaintiff must provide evidence that the Rule 803(6) predicates are satisfied, and Glodz's testimony that the invoices came from the accounting department is insufficient to establish that foundation.

■ As other courts have noted, although "this defect is rather technical," either an affidavit or sworn testimony averring to the facts required by Rule 803(6) is necessary for admissibility under the Federal Rules. The Court may not "graft[ ] a judicial exception upon the admissibility requirement of Federal Rule of Civil Procedure 56(e)." *Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.,* 317 F.Supp.2d 373, 379 (S.D.N.Y.2004). Accordingly, as Plaintiff has not demonstrated the admissibility of the invoices, they may not be considered by the Court for purposes of the deciding this motion.

■ Even if the Court were to find the invoices admissible at this juncture, Plaintiff has still failed to come forward with evidence that is sufficient to demonstrate the absence of a material issue of fact as to whether Affordable Kitchens paid the invoices in full. Plaintiff did not provide a complete set of Atlas Meble's "bills and records of payments for the court's review," and, "[w]ithout such documentation, it is impossible for this Court to determine whether [Affordable Kitchens's] acquiescence [for an account stated claim] can be inferred." *Samara v. Gangemi & Gangemi,* No. 02 CV 1407(RJD)(RML), 2004 WL 3326282, at *2 (E.D.N.Y. June 30, 2004) (citing *Arrow Employment Agency, Inc. v. David Rosen Bakery Supplies,* 2 A.D.3d 762, 769 N.Y.S.2d 732, 733 (2d Dep't 2003)). The invoices submitted by Plaintiff (which total more than the amount that Plaintiff claims is due) also do not indicate when, or for which invoices, Affordable Kitchens made partial payments.[25] *See id.*

---

**25.** The Court notes that there are Polish documents attached to the Complaint that appear to be printouts of Plaintiff's records showing the outstanding balances owed by some of the Defendants (although they do not show payments made). (*See generally* Compl. Exs. 1–5.) These documents are not cited by any of the parties in their motion papers, nor are they attached to the parties' submissions. Further, no party has provided the Court with translations, let alone certified translations, of these documents, in accordance with the Court's August 9, 2012 Order. (Dkt. 47.) That Order directed the parties to submit certified translations of all Polish documents on which the parties intended to rely at summary judg-

at *2 n. 2. Moreover, Bobko, a 50–percent owner of Affordable Kitchens, has submitted an affidavit stating that:

> [w]hen it was agreed that Affordable Kitchens should cease doing business, it owed no further obligation to Plaintiff Atlas. *We had paid all outstanding obligations to Plaintiff by wire transfer.* It defies logic or common sense that Plaintiff Atlas would request that Defendant Affordable Kitchens cease doing business in New Jersey in order to open a new business in New York, while owing money to Plaintiff Atlas. *Nothing was or is owed by Defendant Affordable Kitchens to Plaintiff.*

(Bobko Aff. ¶ 6 (emphases added); *see also* Krol Decl., Ex. B, 24:6–25:23.) While, as Plaintiff argues, a defendant's conclusory statements, standing alone, are insufficient to raise an issue of fact for trial (*see* Pl. Reply, at 8; *see also Premier Steel,* 2010 WL 5248583, at *3), here, on consideration of the entirety of the presented record, the Court finds that Plaintiff has not shown that Affordable Kitchens accepted as correct the invoices in question and promised payment on the invoices, as would be necessary for Plaintiff to be entitled to summary judgment on its claim against Affordable Kitchens for account stated.

The factual dispute over whether Affordable Kitchens paid in full for the furniture it ordered from Atlas Meble also precludes summary judgment on Plaintiff's UCC and breach-of-contract claims against this defendant. Plaintiff has not presented sufficient evidence, in admissible form, showing that Affordable Kitchens actually failed to pay for the orders in question. Summary judgment on Plaintiff's claims against Affordable Kitchens is therefore denied.

ment. (*Id.*) Accordingly, the Court does not consider these documents in deciding this

### 2. *Atlas Kitchens*

Plaintiff alleges that Atlas Kitchens owes $24,634.76 for furniture shipped to it and received. Unlike the other two remaining defendants, Bobko admits that Atlas Kitchens paid some, but not all, of Atlas Meble's invoices. (Krol Decl., Ex. B, at 44:7–15.) Atlas Kitchens contends, however, that there was, and remains, a substantial dispute as to whether Atlas Kitchens owed money to Atlas Meble. This dispute is apparently based in part on the receipt of purportedly nonconforming goods, in part on credits purportedly due for goods that were not timely delivered or were defective, and in part on Plaintiff's purported failure to "perform its part in connection with the operation of [Atlas Kitchens's] business." (Def. Mem., at 4.) According to Bobko, "[n]o training was provided, adequate samples were not delivered, and no order was timely delivered." (Bobko Aff. ¶ 10.) In his affidavit, Bobko also states that he made objections to the invoices received by Atlas Kitchens and identifies the individuals he objected to as Nowicki and Glodz. (*Id.*) Defendants also submit emails and photographs allegedly sent by Atlas Kitchens to Atlas Meble detailing problems with orders. (*See* Def. Mem., Ex. A–1.)

Again, without admissible invoices, there is insufficient evidence to support Plaintiff's claim for account stated. Further, even if the Court were to find the invoices admissible for the purposes of Plaintiff's motion, the record raises an issue of fact as to whether Atlas Kitchens accepted the account stated and agreed to make payment. The testimony and emails submitted by Atlas Kitchens show that it objected a number of times to the timeliness and

motion.

quality of the orders it was receiving from Atlas Meble. *See DiMare Homestead,* 2012 WL 1155133, at *22. Moreover, the record suggests that Defendants objected to the same orders that are reflected on the invoices that Plaintiff claims are unpaid. (*See* Krol Decl., Ex. G, at Invoice # EX/003962007 (listing names next to items ordered, including the names of Goggins, Philip, Neil, Sabina, Marcia, Rauschnabel, and Denis); Def. Mem., Ex. A–1, at Bobko 28, 29, 31, 33, 35 (emails regarding the order for Marcia); 34, 52, 53, 59, 77–78 (Goggins); 59, 74–76, 80–85 (Raschnabel); 59 (Neils); 59, 63, 64, 65, 66–71 (Sabina); 59 (Philip); 72–73 (Denis); 72–73 (Eva).) Meanwhile, Plaintiff has not provided any evidence—not even records of partial payments—to support its contention that there was an agreement between Atlas Meble and Atlas Kitchens to pay the invoices.

There are also factual issues precluding summary judgment on Plaintiff's claims for goods sold and delivered under the UCC and for breach of contract. Although no party has provided a contract between Atlas Kitchens and Atlas Meble, it appears undisputed that Atlas Kitchens ordered products from Atlas Meble and that these orders constituted contracts. (Krol Decl., Ex. B, at 29:18–20.) It is also undisputed that Atlas Kitchens received at least some kitchen furniture from Atlas Meble and resold that furniture (*id.* at 44:2–15), and that Atlas Kitchens made some payments to Atlas Meble, but not all (*id.* at 44:11–15). The record contains no evidence, however, as to which products Atlas Kitchens paid for or the amount of its payments. There is also no evidence that the *particular* kitchen furniture for which Plaintiff now seeks payment was accepted by Atlas Kitchens. In the complete absence of evidence on these issues, Bobko's testimony and the email correspondence regarding the nonconforming nature of certain products that Atlas Kitchens received are sufficient to raise triable issues of fact as to whether the orders on which Plaintiff seeks payment were accepted in full by Atlas Kitchens. (*See, e.g.,* Bobko Aff. ¶ 11; Def. Mem., Ex. A–1, at Bobko 63–71, 72–73, 74, 82–83.) [26]

Of course, based on the UCC principles set out above (*see supra* Discussion, Part III.A.2), Atlas Kitchen will ultimately be required to pay for any orders that it accepted within the meaning of Section 2–606 of the UCC, regardless of whether the products were defective or not timely shipped. On the present record, however, Plaintiff has failed to provide the Court with sufficient evidence demonstrating that, as a matter of law, Atlas Kitchens accepted the particular furniture shipments and failed to remit payment for those shipments on which Plaintiff alleges it is owed payment. The parties' factual disputes over the timeliness of Atlas Meble's shipments to Atlas Kitchens, and the quality of the goods Atlas Kitchens re-

---

**26.** Plaintiff points to deposition testimony by Bobko that he still has 12 Atlas Meble kitchens in his possession that were provided by Atlas Meble to Atlas Kitchens. (Pl. Mem., at 12.) It is, however, unclear whether, in that testimony, Bobko was speaking of the products on the invoice, dated November 30, 2007, that Plaintiff claims was never paid. That invoice refers to specific orders and thus appears to be for goods intended for customers. (*See* Krol Decl., Ex. G, at Invoice No: EX/00396/2007.) Yet, in his deposition testimony, Bobko appears to have been describing display kitchens set up in the Atlas Kitchen showroom. (*See id.* at Ex. B, at 13:23–14 ("Q: What happened to the display kitchens? A: I still have them. I stor[ ]ed them. And I offered them—I can send them back by container. But now they have to cover parkway fees because I kept it in the way for a couple of years. And now I'm just keeping it in my friend's garage."), 13:17–15:2.) This seeming inconsistency must be resolved at trial.

ceived, also preclude summary judgment on Plaintiff's claim for breach of contract because these disputes give rise to triable issues of fact as to whether Plaintiff complied with its own obligations under any contracts governing the parties' transactions.

Accordingly, Plaintiff's motion for summary judgment on all of its claim against Atlas Kitchens is denied.

### 3. *Denton*

Plaintiff alleges that, of the $33,525.58 that Atlas Meble charged Denton for its order of kitchen furniture, Denton has an outstanding unpaid balance of $23,525.58. (*See* Pl. Mem., at 4.) Plaintiff, however, has provided no evidence of how much Denton paid, relying, once again, on inadmissible invoices and shipping records. In opposition, Kaczor has submitted a sworn affidavit stating that Denton only placed one order with Atlas Meble and that Denton paid the corresponding invoice for that order in full, and in fact overpaid. (Kaczor Aff. ¶ 5; Krol Decl., Ex. C, at 42:2–6, 42:13–16, 44:21–22.) Kaczor states that the payments were made by four wire transfers and proffers bank records showing three wire transfers made in 2007 from Denton's account to Atlas Meble's bank account in Poland, and a fourth wire transfer, also made in 2007, made to another, unidentified account. (Def. Mem., Ex. C (Denton bank records, reflecting wire transfers made on Aug. 30, 2007 ($10,000), Oct. 11, 2007 ($10,900), and Oct. 22, 2007 ($5,128)), Ex. D (Denton bank records reflecting a wire transfer made on Aug. 2, 2007).)[27]

Plaintiff concedes that Denton paid more money than it owed to Atlas Meble, but contends that Denton instructed Atlas Meble to apply some of Denton's payments to Global's account instead. (Pl. Reply, at 11; Kaczor Aff. ¶ 6.) Defendants dispute this fact. In his affidavit, Kaczor states that Denton did not authorize Atlas Meble to apply Denton's funds to Global's account. (Kaczor Aff. ¶ 6.) In support, Kaczor points to a fax dated October 22, 2007, from Denton to an employee at Denton's bank, instructing the bank to transfer $5,128 from Denton's bank account to Atlas Meble. (*Id.* (citing Def. Mem., Ex. D) (Facsimile from Denton Stoneworks, Inc., dated Oct. 22, 2007).) Apparently, this is one of the payments that was applied to Global's account. (*Id.* ¶ 6.) Plaintiff responds by citing deposition testimony from Glodz, indicating that "sometimes the money [from Defendants] was sent from the different accounts[,] [a]nd then later by phone or by email we would receive specific instructions as how to record those payments in the accounting system." (Krol Decl., Ex. E, at 122:3–23.) Glodz cites a specific email, in which he asked Kaczor how one of Denton's payment should be applied. (*Id.*; Def. Mem., Ex. A, at DF000012.) While Glodz did not remember Kaczor's response and none has been provided to the Court, Glodz testified that Atlas Meble's books show that the money was applied to Global's account, and he was "sure" that Atlas Meble would have booked the payment as requested. (Krol Decl., Ex. E, at 122:16–124:25.)

The foregoing shows there is a triable issue of fact as to whether Denton paid its invoices in full and whether Denton authorized Atlas Meble to apply its payments to Global's account. As Plaintiff must

---

**27.** The Court has found no evidence in the record showing that Atlas Meble is the owner of the account to which the August 2, 2007 wire transfer was made. The Court also notes that, in his affidavit, Kaczor states that Denton's payments to Atlas Meble were made by three wire transfers in 2007 and one in 2008 (Kaczor Aff. ¶ 5), but the record contains no evidence of any wire transfer made in 2008.

prove that Denton did not pay in order to succeed on its claims for account stated, breach of contract, and goods sold and delivered, summary judgment on all of Plaintiff's claims against Denton is denied.

### C. *Piercing the Corporate Veil*

Plaintiff argues that the Court should hold Bobko liable for any unlawful conduct of Affordable Kitchens and Atlas Kitchens, should unlawful conduct be established. Defendants cross-move to dismiss the claims asserted directly against Bobko, arguing that there is no evidence to support piercing the corporate veil.[28]

Under New York law, "piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Matter of Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993); *see also Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir.1997). Importantly, "[w]hile complete domination of the corporation is the key to piercing the corporate veil, especially when the owners use the corporation as a mere device to further their personal rather than the corporate business, such domination, standing alone, is not enough; some showing of a wrongful

or unjust act toward plaintiff is required." *Matter of Morris*, 82 N.Y.2d at 141–42, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (citations omitted).

Some factors that tend to show domination are "the intermingling of corporate and personal funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 18 (2d Cir.1996); *see also Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138–39 (2d Cir. 1991). These factors are not exhaustive, and, ultimately, "courts apply the preexisting and overarching principle that liability is imposed to reach an equitable result." *Bridgestone/Firestone*, 98 F.3d at 18 (citation and internal quotation marks omitted).

Plaintiff argues that Affordable Kitchens and Atlas Kitchens were alter egos of Bobko and that Bobko should be held liable for their actions.[29] On the issue of domination, Plaintiff argues that Bobko created Affordable Kitchens and Atlas Kitchens in order to do business with Atlas Meble and that Bobko was either the sole

---

**28.** Defendants raise essentially the same arguments regarding Plaintiff's claims against Kaczor, but, for the reasons stated above, the Court is dismissing those claims on the basis of the forum-selection clause.

**29.** Plaintiff also argues that Bobko signed the Venture Agreement in his individual capacity and that, "[b]ecause [the Venture Agreement] is the only written agreement, the only conclusion to be drawn is that Bobko intended to be personally liable for the orders from Atlas Meble, *no matter on behest of which entity he*

*placed the order."* (Pl. Mem., at 15 (emphasis added).) As noted above (*see supra* Discussion, Part II.A.3), Plaintiff's argument that Bobko signed the Agreement in an individual capacity appears to be inconsistent with both the plain language of the Agreement and other evidence in the record. Furthermore, even if the Agreement could be read in this way, Plaintiff has offered no evidence or legal analysis to show how the Venture Agreement could possibly be read to govern orders place by entities other than Global.

member or had a majority interest [30] in the entities. (Pl. Mem., at 15.) Plaintiff also suggests that Bobko dissolved both companies after the business relationship with Atlas Meble soured and Atlas Meble attempted to collect monies owed. (*Id.*)

■ The facts proffered by Plaintiff are insufficient to warrant piercing the corporate veil at this stage. Certainly, the fact that a corporation may have been created to engage in certain business does not warrant stripping its owners of protection from liability, and the mere fact that an individual is the sole member, shareholder, or a controlling person in an entity does not, by itself, justify piercing the corporate veil. *See Abu–Nassar v. Elders Futures Inc.*, No. 88 Civ. 7906(PKL), 1991 WL 45062, at *11 (S.D.N.Y. Mar. 28, 1991) ("Clearly, the simple fact that [plaintiff, as sole shareholder] oversaw and controlled the business does not mean that the corporate entities were mere alter egos.") (quotation marks and citation omitted). As for whether Affordable Kitchens and Atlas Kitchen failed to observe corporate formalities or were utilized by Bobko for improper purposes, the record is largely devoid of evidence that would permit a thorough, multi-factor analysis.

The record does contain invoices that were separately directed to these different corporate entities (*see* Krol Decl., Ex. G), and reflects at least some indicia that Bobko did not treat these entities as mere extensions of himself. (*See, e.g.,* Def. Mem., Ex. A–1 (emails from someone named Agnes, who appears to have been an employee of Atlas Kitchens, to Atlas Meble, using an "office@atlaskitchens. com" email address and an Atlas Kitchens signature); Krol Decl., Ex. B.) On the other hand, there is also evidence that

Bobko may have blurred certain lines between himself and these corporate entities by, at times, using a personal email address to communicate with Atlas Meble on behalf of Atlas Kitchens or Affordable Kitchens (*see, e.g.,* Def. Mem., Ex. A–1, at Bobko 24, 28, 29, 31), and that Atlas Kitchens may have been insolvent at the time of the relevant transactions (*id.* at Bobko 86, 88–89, 97–98). Bobko's deposition testimony also suggests that at least some funds were intermingled between Affordable Kitchens and Atlas Kitchens. (Krol Decl., Ex. B, at 25:13–15.) Taken as a whole, the record raises an issue of fact as to whether Bobko exercised complete domination over the entities, precluding partial summary judgment on this issue. *See Abu–Nassar,* 1991 WL 45062, at *11 (finding summary judgment inappropriate where resolution of disputes of material fact could justify piercing the corporation's veil) (citing cases).

■ In any event, there are disputed issues of fact regarding whether Bobko's alleged domination over Affordable Kitchens and Atlas Kitchens was used to commit a fraud or wrong against Atlas Meble. Defendants argue that there is no evidence of fraud or any other wrongdoing in this case. (Def. Mem., at 13.) Under New York law, however, evidence of fraud *or* wrongdoing *or* some act of injustice is sufficient to satisfy the second prong of the test for piercing the corporate veil. *See Matter of Morris,* 82 N.Y.2d at 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157. Here, there is an issue of fact as to whether, as Plaintiff alleges, Bobko dissolved Affordable Kitchens, and then later dissolved Atlas Kitchens as well, so as to evade Atlas Meble's attempt to collect debts owed by

---

**30.** The record actually shows that Bobko had the sole interest in Atlas Kitchens and a 50– percent interest in Affordable Kitchens. (Krol Decl., Ex. B, at 16:10–21.)

these companies.[31] If Plaintiff is ultimately able to demonstrate this, then, assuming Plaintiff can also show that monies were in fact owed, there might be a basis for piercing the corporate veil. *Cf. Weinreich v. Sandhaus*, 850 F.Supp. 1169, 1179–80 (S.D.N.Y.1994) ("Carrying on a business without substantial capital and leaving the corporation without substantial assets to meets its debts can justify piercing the corporate veil.") (internal quotation marks and citation omitted).

At this point, given the overall sparseness of the record regarding factors relevant to the corporate-veil analysis, both Plaintiff's motion for summary judgment on the issue of Bobko's liability for the acts of Affordable Kitchens and Atlas Kitchens, and Defendants' cross-motion to dismiss Plaintiff's claims against Bobko, are denied.

## IV. *PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIM OF ATLAS KITCHENS AND BOBKO*

In their Answer, Bobko and Atlas Kitchens assert a counterclaim against Plaintiff, charging the following:

> [Bobko] has incurred substantial costs and is incurring substantial costs in connection with Plaintiff's failure to reimburse him for amounts expended by him

on behalf of Plaintiff. Plaintiff also interfered with Bobko's business relations. Bobko has incurred significant expense in both his efforts to conduct business and to respond to Plaintiff's baseless claims. Bobko seeks the sum of One Hundred Ten Thousand ($110.000.00) Dollars from Plaintiff as reimbursement for advances and related costs.

(Bobko and Atlas Kitchens Answer ¶ 67.)[32] In addition to moving for summary judgment on its own claims, Plaintiff moves to dismiss this counterclaim, on the grounds that it fails to allege sufficient facts to support a claim, fails to state a claim, and fails to meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. (Pl. Mem., at 19.) Nowhere in their own papers do defendants Bobko and Atlas Kitchens respond to Plaintiff's arguments or clarify the legal nature of their claims. Despite this lack of response, however, dismissal of the counterclaim, in its entirety, is not warranted.

As a threshold matter, Plaintiff has not made clear whether it is seeking to dismiss the counterclaim on the pleadings, under Rule 12(c), or on the record, under Rule 56. While Plaintiff's motion uses language that one would expect to see in a Rule 12 motion (*e.g.*, "failure to state a cause of action" and "failure to plead with particularity" (Pl. Mem., at 19)), Plaintiff also

---

**31.** Although Plaintiff asserts in its 56.1 Statement that Atlas Meble "attempted to collect on outstanding invoices prior to 2008" (Pl. 56.1 Stmt. ¶ 35), and that Bobko dissolved his companies after Atlas Meble attempted to collect its debts (*id.* ¶ 36), Plaintiff has not submitted any evidence to support its allegation of when this attempted collection took place, other than the dates on the inadmissible invoices. The undisputed evidence shows that Affordable Kitchens was dissolved in 2007 (Krol Decl., Ex. B, at 17:3–10), and that Atlas Kitchens was dissolved in 2008 (*id.* at 9:6–22), but no party has provided specific dates for the dissolutions, either. Bobko's deposition testimony and affidavit suggest that Alas Me-

ble's invoices may have been received after the dissolutions. (*See* Krol Decl., Ex. B, at 24:6–25:3; Bobko Aff. ¶¶ 10–11.)

**32.** This counterclaim is asserted in the Answer that was jointly filed by Bobko and Atlas Kitchens. (Dkt. 7.) Although the counterclaim, on its face, appears to refer only to expenditures made by Bobko, Bobko, in his affidavit, refers to the counterclaim as being Atlas Kitchen's claim and states that "the amount due and owing [is] to Atlas Kitchens." (Bobko Aff. ¶ 11.) For present purposes, the Court treats the counterclaim as being asserted by both defendants.

relies on the record, arguing, for example, that Bobko's deposition testimony undermines any counterclaim he may be trying to assert (*id.*). Plaintiff's argument regarding Rule 9(b) also seems entirely off-point, as the counterclaim does not appear to sound in fraud, rendering inapplicable Rule 9(b)'s requirement of particularized pleading. Overall, Plaintiff's challenge to the counterclaim is poorly set out in both its Notice of Motion and supporting Memorandum, leaving the Court to guess at how Plaintiff wished to couch its arguments.

More importantly, while it is true that the counterclaim, itself, is poorly pleaded, at least one portion of it appears plausible and potentially supported by the discovery record. This portion of the claim is based on Bobko's assertions that he and/or Atlas Kitchens incurred substantial expenses in opening the Atlas Kitchens store, while Atlas Meble failed to uphold its part of the parties' alleged bargain at that time—*i.e.*, to provide substantial support for that store's opening. The plain suggestion here is that Bobko and Atlas Kitchens are asserting a counterclaim for breach of contract. Indeed, as noted above (*see supra* Background, Part A.1), Defendants contend as follows in their 56.1 Statement:

> Defendant Atlas Kitchens was formed at the request of Plaintiff and with the expressive [sic] agreement that Plaintiff would provide such corporation with a show room, samples, catalogues, training and employees in order to conduct its business in Yonkers, New York. In reliance thereon, Defendant Atlas Kitchens expended sums in excess of $100,000 in order to establish its business. Other than providing show room [sic] materials, Plaintiff failed to assist Defendant Atlas Kitchens in any way in the establishment and operation of its business.

(Def. 56.1 Stmt. ¶ 28; *see also* Bobko Aff. ¶ 8.) In his deposition, Bobko testified that, while there was no written contract to this effect, there was a "verbal contract" between him and Nowicki. (Krol Decl., Ex. B, at 9:24–10:2.) Further, there is some evidence supporting Bobko's contention that there was an agreement between Atlas Meble and Atlas Kitchens, under which Atlas Meble was to provide certain products and services to Atlas Kitchens, in consideration for Bobko's agreeing to open the new store. In this regard, the record reflects that Atlas Meble did provide some showroom materials (Bobko Aff. ¶ 8), catalogs (*id.*), and samples to Atlas Kitchens (*id.* ¶ 10), although Bobko and Atlas Kitchens appear to contest the adequacy of the items provided. There is also testimony from Glodz that Atlas Meble agreed to provide training for Atlas Kitchens's employees and that this promise was not fulfilled in its entirety. (*See* Krol Decl., Ex. D, at 61:13–63:8, 81:7–20.) Bobko, for his part, disputes that Atlas Meble performed any of the required training. (*Id.* Ex. B, at 30:19–16.) [33]

As the counterclaim may be construed, at least in part, to raise a contract

---

**33.** To the extent Bobko and Atlas Kitchens plead, as part of the counterclaim, that Plaintiff failed "to reimburse" Bobko "for amounts expended by [him] on behalf of Plaintiff" (Bobko and Atlas Kitchens Answer ¶ 67), the Court construes the pleading to mean that Atlas Meble was obligated to provide support for the new store, failed to do so, and thus owes Bobko and/or Atlas Kitchens (as a measure of contract damages) for the amounts that Bobko was forced to expend on his own for support products and services. This reading of the counterclaim would appear consistent with Defendants' Rule 56.1 Statement and witness testimony, as cited above. Plaintiff's attempt to read this part of the counterclaim more narrowly and literally (as claiming that, contrary to Bobko's testimony, he made payments "on behalf of" Atlas Meble, as its agent (*see* Pl. Mem., at 19–20)) would appear to distort the broader and more general sense of the claim.

claim, and as there is sufficient evidence in the record to raise an issue of fact as to whether Bobko and Atlas Kitchens had a legally enforceable contract with Atlas Meble that Atlas Meble breached, the counterclaim—to that extent—will be permitted to stand.

On the other hand, to the extent Bobko and/or Atlas Kitchens are attempting to assert a counterclaim for tortious interference (*see* Bobko and Atlas Kitchens Answer ¶ 67 (referring to Plaintiff's alleged "interfere[nce] with Bobko's business relations")), their claim should not be allowed to proceed. Not only have Bobko and Atlas Kitchens utterly failed to plead the elements of such a claim,[34] but the discovery record belies that any such claim would have a basis in fact. As Plaintiff points out (*see* Pl. Mem., at 19–20), Bobko conceded, at his deposition, that Atlas Meble never took any steps to interfere with the business relationships of Atlas Kitchens (*see* Krol Decl., Ex. B, at 51:14–52:4). Under the circumstances, and especially where Bobko and Atlas Kitchens have offered nothing in their opposition papers— either with direct reference to the counterclaim or otherwise—to support a tortious interference claim, any such claim is appropriately dismissed. Moreover, as discovery is complete and there is apparently no evidence in the record capable of supporting a tortious interference claim, any such claim is hereby dismissed with prejudice.

## V. *DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT*

Defendants have cross-moved for dismissal or summary judgment in their fa-

vor. (Dkt. 55.) As stated above, dismissal is granted as to any claims asserted by Plaintiff against Global, Kaczor, and Bobko (in connection with his role at Global). The cross-motion of the remaining defendants, seeking dismissal or judgment in their favor, is denied, for essentially the same reasons discussed above in connection with Plaintiff's motion. At bottom, there are triable issues of fact as to whether Affordable Kitchens and Denton paid in full for the goods they received from Atlas Meble, and whether Atlas Kitchens accepted all of the goods for which Plaintiff contends it is owed payment. Should Plaintiff be able to prove, at trial, that Affordable Kitchens and/or Atlas Kitchens is liable to Plaintiff for contract or other damages, then there will also be a triable issue as to whether Bobko should be held liable for those damages.

## *CONCLUSION*

For the foregoing reasons:

(1) Plaintiff's renewed motion for (a) summary judgment or partial summary judgment, and (b) to dismiss the counterclaim pleaded by defendant Bobko and Atlas Kitchens (Dkt. 48) is granted to the limited extent that any counterclaim asserted by Bobko and/or Atlas Kitchens for tortious interference with business relations is dismissed; otherwise, Plaintiff's motion is denied; and

(2) Defendants' cross-motion to dismiss the Complaint or for summary judgment in Defendants' favor (Dkt. 55)

---

**34.** "Under New York law, the elements of a claim for tortious interference with prospective business relations are: (1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship." *Nadel v. Play–By–Play Toys & Novelties, Inc.,* 208 F.3d 368, 382 (2d Cir.2000).

is granted to the extent that all of Plaintiff's claims against Global, Kaczor, and Bobko (arising out of any Global transactions) are dismissed based on a forum-selection clause in favor of the courts of Poland; otherwise, the cross-motion is denied.

The Clerk of Court is directed to change the caption of this action, to remove Global and Kaczor as defendants. Counsel for all remaining parties are directed to contact my chambers within one week of the date of this Order to schedule a telephone conference with the Court, for the purpose of setting a schedule for the trial of all remaining claims. Prior to that conference, counsel are also directed to confer in good faith regarding the possible settlement of those claims.

SO ORDERED